[Civ. No. 9701. First Appellate District, Division One.—January 30, 1936.]

ERNEST RICHTER, Respondent, v. IRENE A. NEILSON, Appellant.

Roland Becsey for Appellant.

Derby, Sharp, Quinby & Tweedt for Respondent.

KNIGHT, J.—The plaintiff, Ernest Richter, sued the defendant, Mrs. Irene A. Neilson, for malicious prosecution, and upon trial before the court sitting without a jury was given judgment for damages in the sum of $1150, from which judgment defendant appeals. The action grew out of plaintiff's arrest on a grand theft charge filed against him on May 6, 1932, by the defendant after consultation with a deputy district attorney who drew the criminal complaint and authorized the issuance of the warrant of arrest. The specific charge made against plaintiff was that he unlawfully took $265 of the personal property of Mrs. Neilson. He was arrested on May 12, 1932, and after being imprisoned for an hour was released on bail. His preliminary examination began shortly after his arrest, but was continued some ten times, and on August 9, 1932, the magistrate dismissed the case upon the ground of insufficiency of evidence. Approximately six months later plaintiff brought the present action. As grounds for reversal defendant contends that the evidence is legally insufficient to support the findings or judgment, and that the trial court erred in excluding certain testimony offered by her in refutation of the charge of malice. In our opinion each contention so made by defendant must be sustained.

With respect to the law governing the case, it has been repeatedly declared by the courts of this state that actions for malicious prosecution have never been favored in the law; and while they have been readily upheld when the proper elements thereof have been established, they are sustained only when it is shown that the prosecution was in fact actuated by malice and the party instigating the same had no reasonable ground for causing the prosecution. Considerations of public policy are given as the reasons for so holding, it being said in this regard that it is for the best interests of society that any person who has good reason to believe the law has been violated shall have the right to cause the arrest of the offender, and consequently for his protection

in so doing it is the established rule that if he has reasonable ground for his belief and acts thereon in good faith, he shall not be mulcted in damages merely because the accused is able at the trial to establish that no crime was committed or that he is innocent. (*Ball* v. *Rawles*, 93 Cal. 222 [28 Pac. 937, 27 Am. St. Rep. 174]; *Lacey* v. *Porter*, 103 Cal. 597 [37 Pac. 635]; *Haydel* v. *Morton*, 8 Cal. App. (2d) 730 [48 Pac. (2d) 709], and cases cited therein; *Dunlap* v. *New Zealand F. & M. I. Co.*, 109 Cal. 365 [42 Pac. 29].) ▮ Malice, therefore, being the chief element of a cause of action for malicious prosecution, the authorities hold unanimously that no such action may be maintained unless the plaintiff establishes that the defendant in instituting the criminal proceeding was actuated in his conduct by some improper or sinister motive. (16 Cal. Jur. 735.) In emphasizing the indispensability of such element, the court in *Griswold* v. *Griswold*, 143 Cal. 617 [77 Pac. 672], quoted the following: "As said by Chief Justice Redfield in *Barron* v. *Mason*, 31 Vt. 189, 197: 'For it is found in almost every book upon the subject, that if defendant, however causelessly, did really act in good faith and without malice in preferring the charge, he cannot be made liable for a malicious prosecution.' "

Furthermore, it is well settled that the element of malice thus required to be established must be actual malice (16 Cal. Jur. 735), which, as pointed out in *Jenkins* v. *Gilligan*, 131 Iowa, 176 [108 N. W. 237, 9 L. R. A. (N. S.) 1087], is vastly different from mere negligence. As there stated, the characteristics of mere negligence are inadvertence or absence of intent to injure; whereas to constitute malice there must have been a motive or purpose, and it must have been an improper one. As there stated also, the malice requisite to a cause of action for malicious prosecution is not the same thing as the failure to act as a reasonable person would under the circumstances. True, the rule does not require a plaintiff to show that the prosecution was impelled by personal hostility, a grudge, or ill will; but there must be evidence importing bad faith or want of sincere belief that the facts and circumstances justify the prosecution; and the malice must refer to the mind and judgment of the prosecutor in the exercise of the particular act charged as a malicious prosecution. (*Griswold* v. *Griswold*, *supra*; *Fleischhauer* v. *Fabens*, 8 Cal. App. 30 [96 Pac. 17].)

■ Want of probable cause is another essential element of an action of this kind. (*Haydel* v. *Morton, supra.*) But whether or not a want of probable cause is shown, malice must be affirmatively established; and it is not sufficient to show merely that the criminal proceedings complained of were initiated without proper ground or even without what in law constitutes probable cause. (16 Cal. Jur. 735; 18 R. C. L. 28.) In other words, there must be a concurrence of malice and want of probable cause; and the burden is always on the plaintiff to prove both. (*Griswold* v. *Griswold, supra; Haydel* v. *Morton, supra.*) ■ Even though it be found, therefore, that the facts within the knowledge of the person making the criminal charge do not in point of law constitute a crime, if they are of such character as to induce in the mind of a reasonable person the honest belief that a crime has been committed and the accuser is not actuated by improper motives, he is not subject to damages for having caused the arrest. (*Dunlap* v. *New Zealand F. & M. I. Co., supra;* 16 Cal. Jur. 741.)

■ Moreover, it has long since been the law that if in addition to his own belief a defendant proves that before commencing the prosecution of the action alleged to be malicious he sought the legal advice of an officer selected by the people to prosecute offenders against laws and in good faith fully and fairly disclosed to that officer all of the information he possessed and was then advised that a crime had been committed and the prosecution is based upon a complaint prepared by that officer, he has made out a complete defense to the action (*Dunlap* v. *New Zealand·F. & M. I. Co., supra;* 16 Cal. Jur. 741, and cases cited under note 12; *Ball* v. *Rawles, supra; Hahn* v. *Schmidt,* 64 Cal. 284 [30 Pac. 818]), however erroneous the advice may have been (*Potter* v. *Seale,* 8 Cal. 217, 218, 226; 18 R. C. L. 45); and such defense may be interposed and proved under the general issue. (*Levy* v. *Brannan,* 39 Cal. 485; 16 Cal. Jur. 746.)

■ In the present case the circumstances leading up to plaintiff's arrest were as follows: In October, 1931, he entered into a verbal contract with Mrs. Neilson and her sister to install a heating plant and certain plumbing in an apartment house recently acquired by them on Jackson Street in San Francisco, and to furnish all materials and labor necessary to complete the job. The agreed contract price was

$865, but before the work was started plaintiff raised the price to $950, claiming that the cost of materials had advanced; and before the job was finished certain repair work was done and two radiators were installed, which plaintiff claimed were not included in the contract price. The cost of the former was $58 and the latter $120.

Before the work was begun nothing was said as to how or when the contract price should be paid, but during the progress of the work plaintiff demanded and received three payments, aggregating $665, claiming that such payments were necessary to finance the job and pay materialmen. One payment was for the sum of $265. It was made on April 4, 1932, and was afterwards selected by the deputy district attorney as the basis for the criminal charge. Mrs. Neilson claimed that at the time plaintiff demanded said payment he represented that it was necessary for him to have the money to pay the account of the Kewanee Boiler Company, which had furnished much of the material; that if such payment were made he would be able to obtain a discount and preserve his credit, and that later he would produce the receipted bills to show that the money had been so applied. The work was practically completed on April 8, 1932, at which time plaintiff took away most of his tools and materials. On that day also he demanded and was paid an additional $100, leaving a balance due of $185 on the agreed contract price of $950. About a week later Mrs. Neilson requested him to do a few other small jobs and he promised to attend to the matter the next morning. He failed to appear, however, and within the next few days, after trying to reach him by phone, Mrs. Neilson went to his shop and found it vacant. She was informed by a man in charge there that a day or two previously plaintiff had removed or disposed of his equipment and left town. Shortly thereafter several materialmen called on Mrs. Neilson, and after inquiring as to plaintiff's whereabouts, demanded payment of the balance due on their accounts, and threatened to file liens against the premises at once unless the accounts were paid. One was the representative of said boiler company, who informed Mrs. Neilson that only $100 had been paid on its account and that there was still due approximately $265. Being thus threatened with the filing of liens and being unable to get in touch with plaintiff otherwise, Mrs. Neilson, who is referred to in the briefs as an

elderly person, wrote him a letter, dated April 24, 1932, which plaintiff admits having received and ignored, stating that the heating plant was working satisfactorily, but that she wanted him to call and do some more work; and on the following day, believing that plaintiff had perpetrated a fraud upon her and fled, she and her sister sought the counsel of Duncan Matheson, treasurer of San Francisco, who was an old family friend and for many years had been chief of the detective bureau of the San Francisco police department. After conferring with him, she and her sister went to the detective bureau and were escorted by a member thereof to the office of the deputy district attorney having charge of the bond and warrant department, to whom, in answer to his questions, she related the facts of the case. She informed him how plaintiff had collected the money and not paid the bills; of the circumstances of his disappearance and her unsuccessful efforts to locate him. She also produced the canceled checks showing the payments she had made; whereupon the deputy asked whether at the time plaintiff demanded any particular payment he made any representations or promises as to whether the money would be used to pay bills against the job; and if so to designate the check representing such payment. In response Mrs. Neilson handed him the check for $265 and related what she claimed plaintiff had said when he asked for that payment. The deputy thereupon selected that particular payment as the basis of the criminal charge and drafted the complaint accordingly. He requested, however, that she withhold filing the same for a few days in the hope that plaintiff might return and adjust matters. Complying with such request Mrs. Neilson took no action in the matter for approximately two weeks, but continued her efforts to locate plaintiff. Meanwhile materialmen and laborers repeated their threats to place liens against the place, and finally, on May 6, 1932, she swore to the criminal complaint, immediately following which liens amounting to $400 were filed against the property; and a week later plaintiff was placed under arrest.

Shortly after the arrest was made it was disclosed that a day or two after having received the check for $265 plaintiff applied the proceeds of that particular check to the partial payment of various bills against the job, $100 of which was paid on the account of said boiler company; moreover, he denied having made any representations or promises whatever at

the time he demanded the current payments. He admits, however, that with the exception of the items of extra repair work and the two radiators, he agreed to pay for all materials and labor necessary to complete the job, and that he did not do so. Furthermore, he admits that shortly after taking away his tools and materials he closed his shop in San Francisco and went to Sacramento. His explanation therefor was that he went there to look for another job. He claimed, however, that he returned to San Francisco every week-end, and that on each of those week-ends he called at defendant's premises to see whether the heating plant was operating satisfactorily and to get the rest of his tools and materials, at which time, so he testified, he inquired for defendant, but did not find her in. He also admits that about the time he disposed of his business in San Francisco he changed his San Francisco residence address; and that not until after his arrest did he make any request for the payment of the unpaid balance on the contract price. The deputy district attorney was called as a witness for defendant, but his memory as to the exact conversation which took place at the conference between him and Mrs. Neilson was not clear. According to his recollection Mrs. Neilson told him that plaintiff agreed to pay all bills; that after the work was finished she "sought information as to the payment of the bills, and found liens going on, and when she looked him up she couldn't find him, that his former place of business was vacant, and moreover he actually had left". Continuing, he testified: "If you want my conclusion it was he had skipped, and on that I thought there was probable cause and issued the warrant." In her own behalf Mrs. Neilson testified among other things that after having consulted with the deputy district attorney it was her honest belief that plaintiff was guilty of the offense charged against him and that when she swore to the complaint she was not actuated by any malice whatever but was prompted to do so only by the honest belief that the charge she was making was well founded.

Measured by the legal standards hereinabove set forth, the evidence, in our opinion, is legally insufficient to establish a case of malicious prosecution, first, for the reason that the record reveals no direct evidence to prove that the defendant was actuated by any malicious motives, nor in our opinion were any circumstances proved from which an inference of

malice may be reasonably inferred; and secondly, it affirmatively appears that in causing plaintiff's arrest defendant acted under the advice of the deputy district attorney and in the honest belief that plaintiff had committed the offense with which he was charged.

■ Plaintiff argues that there was a want of probable cause, and that malice may be inferred therefrom. We find no merit in the point. The rule is that where there is no substantial conflict in the evidence the question of what facts and circumstances amount to probable cause is one of law (*Booraem* v. *Potter Hotel Co.,* 154 Cal. 99 [97 Pac. 65]; *Holliday* v. *Holliday,* 123 Cal. 26 [55 Pac. 703]; *Ball* v. *Rawles, supra; Moore* v. *Durrer,* 127 Cal. App. 759 [16 Pac. (2d) 676]; *Haydel* v. *Morton, supra*); and that no presumption of malice arises from a want of probable cause. (*Griswold* v. *Griswold, supra.*) ■ Moreover, probable cause does not depend on the actual state of the case in point of fact, but upon the honest and reasonable belief of the party prosecuting; and the question of whether there was probable cause must be determined from the facts as they existed and appeared to the party prosecuting at the time he preferred the charge. (*Harkrader* v. *Moore,* 44 Cal. 144; *Griswold* v. *Griswold, supra.*) Conceding, therefore, that the facts surrounding this particular payment of $265, as they were disclosed after plaintiff's arrest and at the preliminary examination, failed in point of law to establish the commission of a crime, it does not follow therefrom as a matter of law that the situation existing and as it appeared to defendant at the time she swore to the complaint, which was brought about mainly by plaintiff's own peculiar conduct, would not induce in the mind of a reasonably prudent person the honest belief that a crime had been committed. (*Dunlap* v. *New Zealand F. & M. I. Co.,* supra.) As said in substance in *Jones* v. *Jones,* 71 Cal. 89 [11 Pac. 817], where a person so surrounds a transaction with circumstances of his own creation, real or adventitious, indicating that he is guilty of an unlawful act, he should not be heard afterwards to complain that others acted upon the hypothesis thus supported by his conduct.

■ In any event, and entirely aside from the question of whether the circumstances themselves were legally sufficient to constitute probable cause, the defendant was entitled to the benefit of the rule that where one, before instituting the prose-

cution, has in good faith consulted an attorney at law in good standing, particularly if such attorney be one charged with the prosecution of public offenses, and has stated to him all the facts of the case, and has been thereupon advised by such attorney that a prosecution will lie, and such person has acted honestly on that advice, this of itself constitutes probable cause. (*Johnson* v. *Southern Pacific Co.,* 157 Cal. 333 [107 Pac. 611]; *Jirku* v. *Brod,* 42 Cal. App. 796 [184 Pac. 413]; *Baranger & Co.* v. *Meyer, Cahn & Talbott,* 34 Cal. App. 158 [166 Pac. 862]; *Dunlap* v. *New Zealand F. & M. I. Co., supra.*)

Plaintiff asserts, however, that the defendant made certain false statements to the deputy district attorney, which shows a malicious motive and excludes the defense of "advice of counsel". These assertions, in our opinion, are based either upon a misinterpretation of the evidence or upon theories unsupported thereby. For example, the principal one relied on is founded on the false assumption that the defendant knew at the time she consulted the deputy district attorney that plaintiff had applied all of the proceeds of the $265 check to the payment of bills against the job, and that she failed to reveal such knowledge to said deputy. It is true, the testimony shows that she knew before filing the complaint that plaintiff had paid $100 on the boiler company's account and $25 on the account of the mechanic who constructed the chimney, but it also shows that she had no knowledge whatever that the proceeds of this particular check for $265 had been applied to the payment of the two accounts above mentioned or to the payment of any other bills against the job; and at the time she was informed of the partial payments on the two accounts mentioned she was also told that there were still large sums due on those accounts; and besides at the same time a number of other creditors were clamoring for their money and threatening to file liens against the job. Nor did the deputy district attorney testify, as plaintiff implies, that if defendant had told him the truth no warrant of arrest would have been issued. On cross-examination by plaintiff's counsel and in answer to a hypothetical question which the witness repeatedly declared did not correctly state the facts, he replied simply that if a contractor received $265 on a completed contract "and actually paid it for material and labor used" in performing the contract, no criminal offense, in his opinion,

would be committed. Nor did said deputy testify, as plaintiff implies, that the defendant told him that plaintiff had left town without completing his contract or that liens had already been filed against the premises, or that "none of the $265 had been used to pay the bills". His testimony on these points was that she told him that plaintiff "was going to pay the bills and had not paid the bills", and that after he had been paid the $265 she "sought information as to the payment of the bills, and found liens going on, and when she looked him up she couldn't find him". Contrary to plaintiff's assertions also, the record shows that defendant did make inquiry to ascertain whether plaintiff had paid the bills. Admittedly a number of creditors called on her and demanded the money due them; and obviously the only person from whom she might obtain the information as to who the remaining creditors were and whether they had been paid was plaintiff; and as shown, after a fruitless search for more than three weeks she was unable to locate him. To all appearances he had absconded. The record also discloses, contrary to plaintiff's contention, that defendant correctly informed said deputy as to the amounts of the several current payments made on the contract price, from which it was self-evident that when plaintiff disappeared he had not collected the full amount of the contract price. The remaining specifications of alleged false statements have already been disposed of.

▮ Nor was it incumbent upon defendant, as plaintiff argues, to consult a private attorney before laying the matter before the district attorney's office. (*Dunlap* v. *New Zealand F. & M. I. Co., supra.*) After having tried in vain for three weeks to locate him and having good reason to believe from what had transpired during his absence that she had been defrauded, she was doubtless warranted in bringing the case directly to the attention of the prosecuting authorities.

▮ We are also unable to sustain plaintiff's contention that a legal duty was imposed on defendant "to check up on the actual payments" which had been made by plaintiff before swearing to the complaint, and that her failure so to do was evidence of malice. The rule is that if there are any circumstances within the knowledge of the prosecuting witness, or which he is chargeable with knowing, which would destroy the apparent effect of the facts stated by him, or if,

after obtaining the advice of counsel, and before acting upon it, other facts should come to his knowledge, which he did not submit, his good faith in seeking advice or in acting thereon would be impeached, and the defense dependent upon such good faith would fail. But it is not necessary that a prosecuting witness shall institute an investigation of the crime itself, or seek to ascertain whether there are other facts relating to the offense, or to find out whether the accused has any defense to the charge; nor is he required to exhaust all sources of information bearing upon the facts which have come to his knowledge, and therefore if it is shown that he acts in good faith and fairly discloses to the prosecuting attorney all the facts within his knowledge relating to the offense, and is advised that there is probable cause for an arrest, his defense of probable cause is established and he is exonerated from liability even though the defendant should show at the trial other facts sufficient to secure his acquittal and which might have been ascertained by the prosecuting witness if he had made more diligent inquiry therefor. (*Dunlap* v. *New Zealand F. & M. I. Co., supra; Ball* v. *Rawles, supra; Johnson* v. *Southern Pacific Co., supra.*)

As further evidence of malice plaintiff calls attention to certain testimony showing that at a conference held between plaintiff's attorneys and defendant after plaintiff's arrest defendant was informed that plaintiff had actually used the $265 to pay bills against the job, and that nevertheless she refused to "drop" the prosecution unless plaintiff paid the balance of the outstanding bills. It has been held, however, that transactions occurring subsequent to the commencement of the criminal proceedings are not to be considered in determining the question of malice. (*Hanchey* v. *Brunson*, 175 Ala. 236 [56 So. 971, Ann. Cas. 1914C, 804].)

As to the second ground urged for reversal, the record shows that in refutation of the charge of malice and for the purpose of showing good faith on her part, Mrs. Neilson sought to prove by her own testimony and that of Duncan Matheson the nature of the advice she received from him before going to the district attorney's office; and the evidence was excluded on objection of plaintiff. In our opinion its exclusion was error. As the authorities point out, malice being the main indispensable element of an action of this kind, not only is a plaintiff given a very wide range in proving facts

and circumstances tending to establish such element, but likewise the defendant is given the same full opportunity to disprove it. (16 Cal. Jur. 748.) As said in *Griswold* v. *Griswold, supra,* and again in *Burke* v. *Watts,* 188 Cal. 118 [204 Pac. 578], whatever tends to prove good faith tends to disprove malice and must be admitted. Therefore a defendant is entitled to introduce any competent evidence to show that he had reasonable cause for instituting the proceeding or that even if he did not have such cause, he was not actuated by malice (*Runo* v. *Williams,* 162 Cal. 444 [122 Pac. 1082] ; 16 Cal. Jur. 748), the court in one early case having gone so far as to say in substance that the defendant is entitled to prove any fact or circumstance which tends in the slightest degree to show a contrary motive; and that no fact or circumstance should be excluded unless the court is satisfied to a moral certainty that no rational inference may be drawn therefrom. (*Lyon* v. *Hancock,* 35 Cal. 372.) And it has been expressly held that for the purpose of rebutting inferences of malice a defendant may introduce evidence to show what information and advice he received from reputable persons in whom he confided and on which he relied. (See Newell on Malicious Prosecution, p. 323; 38 Cor. Jur. 491; also *Le Clear* v. *Perkins,* 103 Mich. 131 [61 N. W. 357, 26 L. R. A. 627].) ▮
It is true that evidence of advice given by policemen and detectives or like officers is not legally sufficient to establish the defense of "advice of counsel" (38 Cor. Jur. 431), because such defense, if established, is a complete defense. But it seems that for the purpose of disproving the charge of malice and to show good faith such evidence is admissible. (Newell on Malicious Prosecution, *supra.*) " . . . upon the question of malice the law is more tender towards the inexperience or the infirmities or the idiosyncrasies of parties. Malice is judged with reference to the party, and whatever fairly tends to show that he acted with good faith, and without malice, must be received. . . . But if the party fail in showing such ground of action as would have induced prudent and careful men to have believed in the plaintiff's guilt, and to have instituted the prosecution, he may nevertheless, if he choose, show that in fact he did act upon what he had at the time regarded as good cause, either from common report or remote circumstances, such as excited suspicions in his mind to the extent of creating belief of guilt, although short of

probable cause." (*Barron* v. *Mason*, 31 Vt. 189, 197, quoted approvingly in *Griswold* v. *Griswold, supra.*)

The judgment is reversed.

Tyler, P. J., and Cashin, J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 30, 1936.