[Civ. No. 22067.   Second Dist., Div. One.   Aug. 15, 1957.]

CHARLES DAVID GROVE, Respondent, v. PURITY STORES, LTD. (a Corporation) et al., Appellants.

Marion A. Smith and Fred A. Watkins for Appellants.

Champion & Quinn and Thomas Quinn for Respondent.

WHITE, P. J.—Plaintiff instituted this action to recover damages for malicious prosecution. The cause was tried before the court sitting without a jury, resulting in a judgment for plaintiff awarding him damages in the sum of $1,250. This appeal is prosecuted by defendants from said judgment.

Concerning the factual background surrounding this litigation, the record reflects that at the time of his arrest, plaintiff was 69 years of age; he was born in Paso Robles, San Luis Obispo County, California, where his arrest occurred, and he had resided there continuously except during his absence while serving in the Army in World War I, and in the United States Coast Guard during World War II. He was retired. His monthly income consisted of $78.73 resulting from his military service in World War I, plus $70.30 derived from his Social Security. He and his three brothers shared ownership of a ranch located some 12 miles southwest of Paso Robles, San Luis Obispo County, and which property had been in the family for some 90 years. There was unchallenged evidence that plaintiff's reputation in the community for truth, honesty and integrity was of the highest. He had never before been arrested, and although he had driven motor vehicles, including trucks, since 1910, he had never "received a traffic citation" of any kind. For some years plaintiff had been a customer of defendant corporation.

As to the happenings on the day of his arrest, plaintiff testified that about 4 o'clock on the afternoon of November 18, 1954, he entered the store of defendant Purity Stores, Ltd. to purchase groceries, and in particular a package of Jello. He had some $8.00 and a few cents in his pocket. He testified that upon entering the store he went to "where I used to find it" (Jello). He encountered a lady acquaintance to whom he spoke. He then "just reached over and picked up the ham and went on around looking for the Jello." He "stuck the ham in his pocket." Plaintiff then obtained the package of Jello and went up to the checkstand. He testified further that, "Well, when I got my Jello and got it checked, why, I forgot all about the ham until I just got outside

the door. I made a few steps, 'Well, I'll turn back and pay it now,' but I didn't get turned around until they (defendant Young and James W. MacDonald, assistant manager of the store) stopped me. I told them I was just going to pay for it. 'No, you are not,' they said. 'You are not going to pay for it.' That is Young. 'Just come back inside.' I said O.K. I walked back inside.'' Plaintiff further testified, ''He (defendant Young) kind of talked loud like he was talking to a dog. Asked me why I did it. I said, 'I don't know. I just forgot to pay for it. That is it.' All I was willing to pay for it. 'No you are not. We will go to the police station.' I said, 'O.K. We will go to the Police Station.' '' Defendant Young then escorted plaintiff to the police station where, according to the latter, the former was advised that if he desired to file a complaint he must do so before Judge Fanning of the local judicial district court. On the following morning, defendant Young appeared before Judge Fanning, advised the latter that plaintiff had taken the ham and walked out of the store without paying for it. The judge thereupon prepared the complaint wherein plaintiff was accused of petty theft, and defendant Young swore to the same.

On the preceding evening at 5 p.m. plaintiff was lodged in jail by the police, where he was incarcerated until 10 a. m. on the following day, at which time he was arraigned before Judge Fanning, entered a plea of not guilty and was released on $50 bail. Trial of plaintiff before a jury on the petty theft accusation resulted in a verdict of not guilty.

Sworn as a witness in his own behalf at the malicious prosecution trial, defendant Young testified that he was the manager of defendant corporation's store at Paso Robles and had been such for some three or four months prior to the arrest of plaintiff; that he had been in the employ of the corporate defendant for some three and a half years. He testified that among his duties as store manager was ''the observation of possible shoplifters in the store''; that thefts of merchandise from the store presents ''quite a serious problem,'' resulting in a monthly loss of approximately $100 at the Paso Robles store. As to the occurrences on the afternoon here in question, defendant Young testified he observed a man ''lingering'' in front of the delicatessen case, and ''I observed Mr. Grove (plaintiff) looking from side to side and then putting a package of boiled ham in his pocket of his jacket'' where it was completely concealed from view. The witness then observed plaintiff walk up the aisle, pick up the package of Jello and

proceed to the checkstand. The witness followed plaintiff to the checkstand where the latter paid the former for the Jello and was "checked out." Defendant Young further testified that he knew at that time that plaintiff had the ham in his pocket, but did not ask the latter whether he was going to pay for it—"I thought perhaps maybe he would pay for it. I didn't know, but I wanted to find out." After the Jello had been paid for, defendant Young and James W. MacDonald, assistant manager of the store, followed plaintiff outside and accosted him some 30 or 40 feet away on the sidewalk. Defendant Young testified that, "I stopped him and asked him what he had in his pocket and as I recall he didn't say much of anything until I asked him whether he had the ham in his pocket. He admitted having that and so I asked him, I said, 'Well, would you mind walking over to the police station with us?' and he said, 'No,' and we walked through the parking lot around up through the alley and around the corner to the police department." That plaintiff said, "I wonder what I'll get; $30 or 30 days." and that plaintiff further stated, "I took it, but I don't know why . . . I have never done anything like this before." Defendant Young further testified that upon arrival at the police station "I told the sergeant at the desk that he had taken the package of ham and I was just bringing him over to the police department because I fully believe and I still do that he had taken it and I wanted to report him." That plaintiff made no statement. That the police officer advised him he would have to file a complaint with Judge Fanning. Mr. Young accompanied by an officer, repaired to the court of said judge, and the latter's secretary informed defendant Young that the judge was busy and that he would have to return the next morning. This was between 4 and 5 p. m. Defendant Young returned to the police station and informed the police officer that he couldn't file the complaint until the following morning; the police officer thereupon informed Young that he should go to the judge's office the next morning. Defendant Young testified that he made no statements to the police requesting that plaintiff be retained in jail pending filing of the complaint; nor did Mr. Young, according to his testimony, know that plaintiff would be detained in jail pending the filing of the complaint. In that regard, defendant Young testified as follows:

"THE COURT: Did you make any inquiry whether the man was going to be held in jail?

"A. No, I didn't assume that he would.

"Q. Why didn't you assume that?

"A. Well, I didn't see——

"Q. Any reason why he should.

"A. Well, as far as I was concerned he was—I had seen him do this and I was just performing my duty in bringing him to the police.

"THE COURT: But you didn't see why he should be held in jail.

"A. Not unless I had signed a complaint."

James W. MacDonald testified at the trial of the malicious prosecution case that he was assistant manager for the corporate defendant at its Paso Robles store, and had been for eight months. That he had been employed by such defendant in all, about eight years. The witness testified that on the day here in question he was in the store and "watching through a peephole." He corroborated the testimony of defendant Young as to the conduct of plaintiff in the store and upon the sidewalk when the latter emerged from the store, as well as the testimony of Mr. Young concerning what transpired at the police station. When this witness was asked whether on the sidewalk outside the store plaintiff offered to pay for the ham, his answer was, "I can't remember, no, no."

In rebuttal, Thomas D. Quinn, one of counsel for plaintiff herein, testified that "By my own personal recollection, Mr. MacDonald (the previous witness and assistant store manager) swore under oath at the time of the trial, at the criminal case, that Mr. Grove (plaintiff) right outside Purity Store at the preliminary conversation, made an offer to pay for the merchandise."

█ The necessary elements of an action for malicious prosecution such as the one now before us are, (1) a judicial proceeding favorably terminated; (2) lack of probable cause; and (3) malice. (*Jaffe* v. *Stone*, 18 Cal.2d 146, 149 [114 P.2d 335, 135 A.L.R. 775]). The parties hereto are agreed that the first necessary element is established. Appellants therefore, urge a reversal of the judgment on the ground that the evidence is insufficient to support the findings of the trial court upon the aforesaid necessary elements of (a) lack of probable cause, and (b) malice.

### PROBABLE CAUSE

The decisions of the courts are now in substantial agreement as to what constitutes probable cause or reasonable cause

such as will justify one in arresting or prosecuting another upon a criminal charge. ██ Perhaps as clear and comprehensive a statement of the rule as can be found is that quoted in *People* v. *Kilvington,* 104 Cal. 86, 92 [37 P. 799, 43 Am.St.Rep. 73], as follows: "There must be such a state of facts . . . as would lead a man of ordinary care and prudence to believe, or entertain an honest and strong suspicion, that the person is guilty." (See also *Centers* v. *Dollar Market,* 99 Cal.App.2d 534, 540 [222 P.2d 136]; *Jensen* v. *Leonard,* 82 Cal.App.2d 340, 351 [186 P.2d 206].)

██ Where, as in the case at bar, the evidence bearing on the question of probable cause is in conflict, it is the province of the duly constituted arbiter of the facts to determine whether facts exist which will warrant or reject an inference of probable cause (*Centers* v. *Dollar Markets, supra,* p. 541).

██ Applying the foregoing rules to the case now engaging our attention, we are satisfied that the learned trial judge was correct in the conclusion he reached on the issue of probable cause as set forth in his "Memorandum of Opinion," and reading as follows: "On the question of probable cause, the defendant Young undoubtedly had in the beginning the right to believe that a theft had been committed by the plaintiff Grove. He saw the plaintiff put the packet of ham in his pocket and that he did not later declare or pay for it before he left the store. However, on being accosted by the defendant Young just outside of the store entrance, the plaintiff told the defendant that he had forgotten to pay for it at the time (a common occurrence among shoppers, especially if they are over 70 years of age), that he had just remembered his failure to do so and was about to go back to declare and pay for it. He did not know why he had forgotten and offered at that time to pay for the ham in question.

"At this point defendant Young, in my opinion, had no further reasonable cause to believe that the plaintiff Grove had committed a crime. Nevertheless, regardless of the statement of the plaintiff, Young immediately took him to the police station. This action on the part of the defendant Young started a chain of events which resulted in one of the most flagrant and unjustifiable denials to the plaintiff of his fundamental rights under section 849 of the Penal Code and of due process that has ever come to the attention of this Court."

Reference to the evidentiary narrative hereinbefore set forth, and the inferences reasonably to be drawn therefrom,

discloses substantial ground to support the decision arrived at by the trial judge, and we are, therefore, without warrant or authority of law to disturb it.

## MALICE

■ Conceding, as urged by appellants, that malice is an indispensable factor in a cause of action for malicious prosecution, nevertheless, as it was said by this court in *Singleton* v. *Singleton,* 68 Cal.App.2d 681, 696 [157 P.2d 886] : "In a malicious prosecution case the plaintiff is not required in order to receive compensatory damages to show that the prosecution was inspired by personal hostility, a grudge or ill-will. What is required is evidence which establishes bad faith, or the absence of an honest and sincere belief that the prosecution was justified by the existent facts and circumstances (citations)." (See also *Richter* v. *Neilson,* 11 Cal. App.2d 503, 507 [54 P.2d 54].)

The question of malice also presents an issue of fact to be determined in the trial court. ■ This court is not authorized to disturb a factual finding unless it can reasonably be said that the record is barren of any substantial evidence to sustain it, in which case it presents a question of law.

■ Malice on the part of defendant Young may be inferred from the want of probable cause. It may be shown by proof of lack of good faith on the part of an accusor (*Baker* v. *Gawthorne,* 82 Cal.App.2d 496, 500 [186 P.2d 981]). The element of malice necessarily involves the processes of the mind and its thinking. ■ Therefore, as stated in *Centers* v. *Dollar Markets, supra,* page 542, "Like any other fact in issue, malice may be proved by direct evidence or may be inferred from all the circumstances in the case."

■ In the action now before us there is testimony such as the age and reputation of respondent, his offer to pay for the ham, and the testimony of defendant Young, manager of the corporate defendant's store that included in the factors influencing him in proceeding with a criminal prosecution, were "protecting my job and my company's interests," all of which, together with a consideration of the testimony in its entirety, persuades us that the further declaration of the trial judge in his "Memorandum of Opinion" that "it is apparent from the evidence adduced at the trial that the defendant was impelled to the action he took against the plaintiff by a wrongful motive. That regardless of the circumstances of the case or what personal wrong he might do the

plaintiff the defendant was determined to make an example of him for what effect it might have upon shoplifters in general. In this he totally failed. The jury acquitted the plaintiff in less than five minutes,'' is supported by reason and human experience.

The contention of appellants that the store manager acted upon the advice of the police and the judge of the court wherein the criminal complaint was filed is unavailing because it again presents a question of fact to be determined by the trial court in the malicious prosecution action, and such a defense is not available if it appears to the satisfaction of the court that an accusor did not honestly believe the accused was guilty (*Centers* v. *Dollar Markets, supra,* p. 545).

As to appellants' final argument that, ''Because public policy favors the apprehension and prosecution of persons guilty of crime, an action for malicious prosecution is not favored under the law (*Haydel* v. *Morton, supra* [8 Cal. App.2d 730 (48 P.2d 709)]; *Richter* v. *Neilson, supra* [11 Cal.App.2d 503 [54 P.2d 54)]),'' we are satisfied that the correct rule in this regard was that enunciated by this court in the case of *Siffert* v. *McDowell,* 103 Cal.App.2d 373, 379 [229 P.2d 388], wherein we said: ''Nor is there any merit in appellant's argument that 'actions for malicious prosecution are, for reasons of public policy,' 'not favored.' As noted by respondent, 'this cliche' never did mean as much as it seems to say. Properly applied, as the reviewing court points out in *Jaffe* v. *Stone,* 18 Cal.App.2d 146 at 159 [114 P.2d 335, 135 A.L.R. 775], the term merely means that public policy is in favor of the apprehension and punishment of criminals, and limits the person complaining of criminal charges by placing upon him the burden of proving the basic elements of the tort.''

The judgment is affirmed.

Doran, J., and Fourt, J., concurred.