[Civ. No. 53603. Second Dist., Div. Three. Jan. 4, 1979.]

CITY PRODUCTS CORPORATION, Plaintiff and Appellant, v. GLOBE INDEMNITY COMPANY, Defendant and Respondent.

## COUNSEL

Sheppard, Mullin, Richter & Hampton, William A. Masterson and Ronald P. Kaplan for Plaintiff and Appellant.

Grace, Neumeyer & Otto, Richard A. Neumeyer and Brian D. Eyres for Defendant and Respondent.

## OPINION

**POTTER, J.**—Plaintiff City Products Corporation appeals from a judgment of dismissal after a demurrer was sustained (without leave to amend) to its complaint seeking recovery from defendant Globe Indemnity Company pursuant to the terms of a general liability policy of insurance. The policy expressly covered "all sums which the insured shall become legally obligated to pay as damages because of injury . . . sustained by any person or organization and arising out of one or more of the following offenses: Group A—false arrest, detention or imprisonment, or malicious prosecution."

In a prior action, plaintiff, as defendant, suffered a judgment awarding Stanley Homola damages for malicious prosecution. The verdict in Homola's favor awarded $2,725 compensatory damages and $30,000 in punitive damages against City Products. On appeal, the punitive damages were reduced to $10,000. The appellate opinion in *Homola* was ordered unpublished by our Supreme Court. It is, however, appropriate and necessary to refer to it to establish the basis upon which City Products was found liable for punitive damages. That basis is stated in the opinion as follows:

"City Products urges the view that it cannot be held responsible in punitive damages because there is no showing that any malicious acts were done by its agents with the knowledge and under the direction of its

corporate officers having the power to bind the corporation. Reliance is placed upon *Bertero, Hale* v. *Farmers Ins. Exch.* (1974) 42 Cal.App.3d 681 [117 Cal.Rptr. 146] and *Kuchta* v. *Allied Builders Corp.* (1971) 21 Cal.App.3d 541 [98 Cal.Rptr. 588]. City Products asserts that, based on the doctrine of these cases, there was no evidence to justify a finding of malice in fact on the part of employees, agents or others, as being authorized by any corporate officer of City Products, and that if malicious acts were committed by agents of City Products without the knowledge or express direction of such superior officers, there must be a showing of ratification by such officers with full knowledge as to the malicious quality of the prior acts.

"In the case at bench, however, the rules stated do not have application since the evidence discloses that Mr. Keenan was the collection manager for not simply one store of Barker Brothers, but for an entire area, made up of a number of retail stores, and, as such, had authority to bind the corporation, City Products, doing business as Barker Brothers, in making assignments of accounts to collection agencies and giving such agencies the authority to collect any way the agencies saw fit, including the filing of lawsuits and pursuing the same through to judgment.

"City Products stresses the point that many of the acts which might have influenced the jury with respect to malice in fact occurred after the institution of the municipal court action by Loan Adjustment Service against plaintiff. City Products points to the evidence showing hostility between Weiss, attorney for Loan Adjustment Service as plaintiff in the municipal court action, and Sigel, as attorney for plaintiff Homola as defendant in the municipal court action, and the hostility between Bales, the president of Loan Adjustment Service, and the plaintiff.

"But the initial assignment of the Brown-Homola account as a two-debtor account, by Mr. Keenan on behalf of Barker Brothers, without any reasonable, honest or sincere belief in the validity of Barker Brothers' position that plaintiff Homola was a debtor of Barker Brothers, is in and of itself sufficient to establish the element of lack of probable cause."

Upon affirmance of the judgment, defendant paid plaintiff the amount of the compensatory damage award but refused to pay the $10,000 in punitive damages.

Plaintiff's second amended complaint, which set forth the above facts, alleged as damages its payment to Homola of the punitive damage award.

Defendant demurred on the ground that the complaint failed to state facts sufficient to constitute a cause of action. In support of said ground, defendant contends that recovery under the policy is prohibited (1) by section 533 of the Insurance Code,[1] and (2) by the policy of this state to award punitive damages "for the sake of example and by way of punishing the defendant." (Civ. Code, § 3294.)[2] Plaintiff contends to the contrary that (1) recovery is not prohibited by Insurance Code section 533 because plaintiff was held vicariously liable for the act of its employee, not for its own willful act, and (2) an indemnity against punitive damages does not violate the public policy of this state.

Careful examination of the opinion of Division Four of this court affirming the award of punitive damages against plaintiff demonstrates that the basis of such award was the willful act of plaintiff, not vicarious responsibility for the acts of its employee. Recovery from defendant under the policy of insurance is therefore prohibited by Insurance Code section 533. In any event, the policy of this state that punitive damages may be recovered only "for the sake of example and by way of punishing the defendant" precludes passing them on to an insurer. The demurrer was therefore properly sustained.

*The Basis of the Punitive Damage Award*
*Was Plaintiff's Own Willful Act*

Plaintiff's argument that its liability was "based upon an allegedly malicious prosecution instituted by one of City's low-level employees" and that the punitive damage award was "based upon a theory of *respondeat superior*" is contrary to the record. Plaintiff was not held liable merely as principal of the collection agency which brought the action against Homola. This is apparent from the opinion of Division Four of this court which states that the evidence gave rise to a "reasonable inference that the municipal court action against plaintiff [Homola] was commenced at the direction of defendant City Products, . . ." Nor was such liability for punitive damages imposed upon plaintiff vicariously for the tort of its collection manager acting in a manner not authorized but within the scope of his authority. The opinion on appeal makes it abundantly clear that the collection manager was deemed one of

[1]Section 533 of the Insurance Code provides: "An insurer is not liable for a loss caused by the wilful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others.".

[2]Civil Code section 3294 provides: "In an action for the breach of an obligation not arising from contract, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant."

plaintiff's "corporate officers having the power to bind the corporation," making his acts the equivalent of the "knowledge or express direction of such superior officers."

■ Comparable language appears in *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 67 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]: "[A] corporation may be liable for punitive damages only for malicious acts done by its agents and with the knowledge or under the direction of its corporate officials having the power to bind the corporation . . . ." To explain these terms, *Lowe* v. *Yolo County etc. Water Co.* (1910) 157 Cal. 503 [108 P. 297], is cited. There the court said (*id.,* at pp. 510-511): "It is not disputed, of course, that a corporation may be held guilty of malice or oppression by reason of acts of those whom it has placed in charge of its affairs and who 'constitute, to all purposes of dealing with others, the corporation.' (See *Maynard* v. *F. F. Ins. Co.,* 34 Cal. 54 [91 Am.Dec. 672].)"

It is apparent from the foregoing that under California law the imposition of punitive damages upon a corporation is based upon its own fault. It is not imposed vicariously by virtue of the fault of others. The "malice in fact," which was the foundation of the punitive award against plaintiff, was malice of plaintiff acting through its corporate official "having the power to bind the corporation" who, in contemplation of the law, constituted plaintiff itself.

*Coverage Is Prohibited by*
*Insurance Code Section 533*

As above held, plaintiff was assessed punitive damages on account of its *own* willful tort. An element of that tort was "malice in fact." This is clear from the appellate opinion in which the court states that (1) "[t]he 'malice, express or implied,' referred to in Civil Code section 3294, 'has long been interpreted to mean that malice in fact, as opposed to malice implied by law, is required. [Citations.]' (*Bertero, supra,* 13 Cal.3d 43, at p. 66.)," (2) "[m]alice in fact may be proved by reasonable inferences drawn from the proof of want of probable cause," and (3) defendant's "corporate officers having the power to bind the corporation" had acted "without any reasonable, honest or sincere belief in the validity of Barker Brothers' position."[3]

[3]There is, therefore, no merit in plaintiff's contention, raised for the first time on petition for rehearing, that its willful act was not shown to have been "done with a 'preconceived design to inflict injury' " required by *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 887 [151 Cal.Rptr. 285, 587 P.2d 1098], to "exonerate the insurer from liability" (*ibid*). "Malice in fact" and a " 'preconceived design to inflict injury' " are synonymous. (Cf. BAJI No. 6.94, defining malice to "mean a wish to vex, annoy or injure another person," and Pen. Code, § 7, subd. 4.)

In *Maxon* v. *Security Ins. Co.* (1963) 214 Cal.App.2d 603 [29 Cal.Rptr. 586], an insurer was held without obligation to defend a malicious prosecution claim against the insured, though the loss was held to come within the terms of the policy. In so doing, the court said (*id.,* at pp. 615-616):

"The terminology of the policy would appear to require the respondent insurance company to indemnify the appellant from such liability. However, while the appellant might be legally obligated to pay damages for malicious prosecution, the respondent insurer cannot under the public policy of this state indemnify the insured against liability for his own willful wrong. That policy is a part of every insurance contract and is expressed in section 533 of the Insurance Code, which codifies the general rule that an insurance policy indemnifying the insured against liability due to his own willful wrong is void as against public policy. (*Arenson* v. *National Automobile & Cas. Ins. Co., supra,* 45 Cal.2d 81, 84; *Abbott* v. *Western Nat. Indem. Co.,* 165 Cal.App.2d 302, 305 [331 P.2d 997]; see also Civ. Code, § 1668.) In *Russ-Field Corp.* v. *Underwriters at Lloyd's, supra,* 164 Cal.App.2d 83 [330 P.2d 432], the meaning of 'willful act' as used in section 533 was construed as follows: 'A "wilful act" as used in this statute connotes something more blameworthy than the sort of misconduct involved in ordinary negligence, and something more than the mere intentional doing of an act constituting such negligence.' (P. 96.)

"The tort of malicious prosecution connotes something more blameworthy than an act of negligence. (*Richter* v. *Neilson,* 11 Cal.App.2d 503, 507 [54 P.2d 54].) The chief element of a cause of action for malicious prosecution is malice. To constitute malice there must be a motive or purpose, and it must be an improper one. (*Richter* v. *Neilson, supra,* p. 507; *Masterson* v. *Pig'n Whistle Corp.,* 161 Cal.App.2d 323, 338 [326 P.2d 918].) The requirement in a malicious prosecution case is evidence which establishes bad faith, or the absence of an honest and sincere belief that the prosecution was justified by the existent facts and circumstances. (*Singleton* v. *Singleton,* 68 Cal.App.2d 681, 696 [157 P.2d 886]; *Grove* v. *Purity Stores, Ltd.,* 153 Cal.App.2d 234, 241 [314 P.2d 543].) As said in *Grove:* 'The element of malice necessarily involves the process of the mind and its thinking.' (P. 241.) Malice imports willfulness; and, accordingly, in our opinion, is a 'willful act' within the meaning of section 533. [Fns. omitted.]"

■ An exception to the rule stated in *Maxon* exists with respect to insureds held vicariously liable for compensatory damages caused by the willful tort of another. *Arenson* v. *Nat. Automobile & Cas. Ins. Co.* (1955)

45 Cal.2d 81 [286 P.2d 816], embodies this exception. An insured father was held entitled to coverage when he was held liable for "the amount of the damage" (*id.*, at p. 83) sustained by a school district as a result of his minor son's having started a fire. The court said (*id.*, at p. 84): "Section 533 of the Insurance Code, which codifies the general rule that an insurance policy indemnifying the insured against liability due to his own wilful wrong is void as against public policy, has no application to a situation where the plaintiff is not personally at fault. [Fn. omitted.]"

Plaintiff relies upon *Dart Industries, Inc.* v. *Liberty Mutual Insurance Co.* (9th Cir. 1973) 484 F.2d 1295, to extend the rule of *Arenson* to "a case of corporate liability" (*id.*, at p. 1297) for willful wrongs. Dart suffered liability in a libel action and sued its insurer under a comprehensive general liability policy. The opinion does not reveal whether any of the damage award was for punitive damages. The facts as stated were that the offending letter was sent by the president of Owl Drug Company (later merged into Dart Industries). The trial court granted a summary judgment in favor of Dart. This was affirmed by the circuit court. The basis of the affirmance was that this was a case where "vicarious liability is imposed upon an insured in a damage action for a willful act which the insured did not directly commit . . . ." (*Ibid.*) Liberty contended, to the contrary, that because of the fact the letter was written by the president "within the general scope of his corporate responsibilities," the libel was "an act of the corporation within the ambit of section 533." (*Ibid.*) The trial court, however, rejected this contention. Its ruling is described by the circuit court as follows (*ibid.*): "The trial court took the view as shown by its comments during argument that where policy coverage was otherwise admitted, as it was here, and there had been no showing that the letter had by formal action of the Board of Directors been previously authorized or subsequently ratified; and no showing that the corporation by some form of informal action had indicated prior approval or later acquiescence, section 533 did not constitute a legal defense." In upholding this trial court ruling, the circuit court stated (484 F.2d at p. 1299): "Both sides agreed that Fisher was an agent of the corporation as its president; that he was acting in the course of his employment in sending the letter; that other corporate officials were consulted or were aware of its preparation; that it was not the type of matter that would be discussed with the Board of Directors or senior management of Rexall-Dart; and that it was not discussed at that level either before being sent or ratified after being sent. It appears clearly to be the type of activity that would not ordinarily, and did not here, cause a ripple in the management of the affairs of the corporation at the directors' level."

The above passage may not reflect a correct understanding of California law as to what is required to establish "an act of the corporation." (Cf. *Hale* v. *Farmers Ins. Exch.* (1974) 42 Cal.App.3d 681, 690-691 [117 Cal.Rptr. 146].) It does, however, make clear that the basis of the court's decision was the assumption that the liability incurred by Dart Industries was simply vicarious liability for compensatory damages for the willful act of an employee within the scope of his employment.

The facts are otherwise in the case at bench. The damages were awarded because a malicious act was committed by a corporate official "having the power to bind the corporation" so that his act constituted the act of the corporation.

### ▪ *In Any Event Public Policy Requires That the Burden of Punitive Damages Be Borne by the Party Against Whom They Are Assessed*

There is a sharp split of authority nationwide as to whether insurance may validly cover liability for punitive damages. This issue has never been squarely addressed in any California appellate decision. A comprehensive annotation covering this subject appears in 20 A.L.R.3d 343. It states (*id.,* at p. 348): "There is a clear-cut conflict in the decisions as to whether this view should be adopted by the courts, a number of which have held that insurance against liability for punitive damages would be invalid as against public policy."

The lead case holding that indemnity against punitive damages is against public policy is the decision of the Fifth Circuit in *Northwestern National Casualty Company* v. *McNulty* (5th Cir. 1962) 307 F.2d 432, 440-441, where the following rationale appears: "The policy considerations in a state where, as in Florida and Virginia, punitive damages are awarded for punishment and deterrence, would seem to require that the damages rest ultimately as well as nominally on the party actually responsible for the wrong. If that person were permitted to shift the burden to an insurance company, punitive damages would serve no useful purpose. Such damages do not compensate the plaintiff for his injury, since compensatory damages already have made the plaintiff whole. And there is no point in punishing the insurance company; it has done no wrong. In actual fact, of course, and considering the extent to which the public is insured, the burden would ultimately come to rest not on the insurance companies but on the public, since the added liability to the insurance companies would be passed along to the premium payers. Society would

then be punishing itself for the wrong committed by the insured." Cases in other jurisdictions adopting this view include *American Surety Company of New York* v. *Gold* (10th Cir. 1966) 375 F.2d 523; *Nicholson* v. *American Fire and Casualty Ins. Co.* (Fla. 1965) 177 So.2d 52; *Crull* v. *Gleb* (Mo.App. 1964) 382 S.W.2d 17; *Padavan* v. *Clemente* (1973) 43 App.Div.2d 729 [350 N.Y.S.2d 694]; *Teska* v. *Atlantic National Insurance Co.* (1969) 59 Misc.2d 615 [300 N.Y.S.2d 375].

A recent decision taking the contrary view is *Price* v. *Hartford Accident and Indemnity Company* (1972) 108 Ariz. 485 [502 P.2d 522]. The Arizona Supreme Court considered the rationale of the above authorities and rejected it, stating (*id.,* at p. 524):

"One of the leading cases holding that coverage of punitive damages is not against public policy is Lazenby v. Universal Underwriters Ins. Co., 214 Tenn. 639, 383 S.W.2d 1. It quotes at length from McNulty, *supra,* but nevertheless comes to the opposite conclusion. It would serve no useful purpose to cite the numerous cases on each side of this question. They are gathered in 20 A.L.R.3d 343, and in 7 Appleman's Insurance Law and Practice, § 4312. Much has also been written on the subject in various law reviews.

"We are most impressed with the following language from Appleman, *op. cit.* pp. 132-136:

" '[I]t is clear that the average insured contemplates protection against claims of any character caused by his operation of an automobile, not intentionally inflicted. When so many states have guest statutes in which the test of liability is made to depend upon wilful and wanton conduct or when courts, in an effort to get away from contributory negligence of the plaintiff, permit a jury to find a defendant guilty of wilful and wanton conduct where the acts would clearly not fall within the common law definitions of those terms, the insured expects, and rightfully so, that his liability under those circumstances will be protected by his automobile liability policy.' "

Coverage for punitive damages was upheld under similar circumstances in *Harrell* v. *Travelers Indemnity Co.* (1977) 279 Ore. 199 [567 P.2d 1013]. Like the Arizona court, the Oregon court was concerned with punitive damages for gross negligence or willful misconduct. As part of its reasoning, the court said (*id.,* at p. 1021): "Under the rule proposed by the defendant and adopted by the trial court, however, such possible

protection would not be available to a professional person or wage earner or to a housewife or retired person, who might well be ruined financially by a judgment for punitive damages as the result of conduct of no more flagrancy than an act of 'gross negligence,' a momentary 'reckless' act, or conduct 'contrary to societal interests.' "

Though a review of all such authorities would unduly extend this opinion, it appears that most of the cases upholding insurance coverage of punitive damages involve considerations similar to those expressed by the Arizona and Oregon Supreme Courts. Such insurance coverage is valid in jurisdictions where punitive damages are allowed in respect of gross negligence or reckless or wanton conduct. On the other hand, the authorities in jurisdictions where punitive damages are limited to cases involving fraud, oppression or malice have generally invalidated insurance coverage for punitive damages on public policy grounds.

It is clear that California falls into the latter category. (*Gombos* v. *Ashe* (1958) 158 Cal.App.2d 517 [322 P.2d 933].) It is also clear the primary purposes of punitive damage awards in this state are those described in *Northwestern National Casualty Company* v. *McNulty, supra* (307 F.2d at p. 440) "for punishment and deterrence." Civil Code section 3294 expressly so states.

In *Bertero* v. *National General Corp., supra,* 13 Cal.3d at page 65, our Supreme Court noted that implementation of these purposes requires consideration of the wealth of the defendant, saying: "When the defendant is found to be guilty of express or implied malice, the jury may award damages against a defendant 'for the sake of example and by way of punishing' him. (Civ. Code, § 3294.) It follows that the wealthier the wrongdoing defendant, the larger the award of exemplary damages need be in order to accomplish the statutory objective."

In *Zhadan* v. *Downtown L. A. Motors* (1976) 66 Cal.App.3d 481, 500 [136 Cal.Rptr. 132], this court elaborated this theme, saying: "In *Merlo* v. *Standard Life & Acc. Ins. Co., supra,* 59 Cal.App.3d 5 [130 Cal.Rptr. 416], where the same kind of insurance company imposition upon consumers was involved, a punitive damage award of $500,000 was set aside as excessive. The court said (59 Cal.App.3d at p. 18): 'Moreover, we agree that the punitive damage award was excessive as a matter of law. The primary purpose of punitive damages is to punish the defendant and make an example of him. (Civ. Code, § 3294; see *Bertero* v. *National General Corp., supra,* 13 Cal.3d at p. 65.) "It follows that the wealthier the

wrongdoing defendant, the larger the award of exemplary damages need be in order to accomplish the statutory objective." *(Bertero v. National General Corp., supra,* 13 Cal.3d at p. 65 and cases there cited.) It also follows that the poorer the wrongdoing defendant the smaller the award of punitive damages need be in order to accomplish the statutory objective.' "

The foregoing demonstrates that the policy of this state with respect to punitive damages would be frustrated by permitting the party against whom they are awarded to pass on the liability to an insurance carrier. The objective is to impose such damages in an amount which will appropriately punish the defendant in view of "the actual damages sustained," "the magnitude and flagrancy of the offense, the importance of the policy violated, and the wealth of the defendant." *(Id.,* at p. 501.) Consideration of the wealth of the defendant would of course be pointless if such damages could be covered by insurance. The onus of the award would depend entirely upon the amount of insurance coverage and not upon the legally relevant factors. We conclude, therefore, that the public policy of this state prohibits insurance covering the punitive damages levied against plaintiff.

The judgment is affirmed.

Cobey, Acting P. J., and Allport, J., concurred.

A petition for a rehearing was denied January 24, 1979, and the opinion was modified to read as printed above. Appellant's petition for a hearing by the Supreme Court was denied February 28, 1979.