[No. 44349-6-I. Division One. August 28, 2000.]

FLUKE CORPORATION, *Appellant*, v. THE HARTFORD ACCIDENT & INDEMNITY COMPANY, ET AL., *Respondents*.

238

240

*G. Val Tollefson* and *Matthew R. Kenney* (of *Danielson Harrigan & Tollefson*); and *K.C. Webster* (of *Phillips & Webster, P.L.L.C.*), for appellant.

*John P. Hayes* (of *Forsberg & Umlauf, P.S.*), for respondents.

BECKER, J. — In a California lawsuit, a jury found that Fluke Corporation had maliciously prosecuted a claim against a competitor. The court entered judgment for both punitive and compensatory damages. Fluke had commercial liability insurance through The Hartford Accident & Indemnity Company, insuring Fluke for those sums it became obligated to pay as damages because of injury arising out of malicious prosecution. We hold that the policy covers punitive damages as well as compensatory damages; that Washington, unlike California, has no public policy invalidating insurance coverage for punitive damages or for the intentional tort of malicious prosecution; and that Washington law applies because Washington has the most significant relationship with the insurance contract. Therefore, Fluke has coverage for the entire award.

Fluke Corporation, based in Everett, Washington, manufactures electrical equipment. In 1988, Fluke brought a patent infringement suit in federal court in California against a competitor, Talon Instruments, and Talon's president, Robert Corby. Fluke lost. Judgment was entered in December 1992 on the jury's verdict of noninfringement.

Talon and Corby sued Fluke in a California state court in November of 1993, alleging that Fluke had maliciously prosecuted the patent infringement claim in an attempt to force them out of business. Fluke tendered the claim to its insurer, Hartford. Fluke had general commercial liability insurance with Hartford, including a primary and an umbrella policy.

Hartford agreed to defend Fluke in the lawsuit, but notified Fluke that California does not allow insurance coverage for intentional acts, including malicious prosecution, or for punitive damages. Fluke instituted the present suit against Hartford in Snohomish County Superior Court in July 1996, seeking a declaration of coverage. The parties agreed to stay the litigation in Washington until the entry of a final judgment in the malicious prosecution case.

The jury in California found in favor of Talon and Corby in the spring of 1997. The verdict awarded two million

dollars in compensatory damages and four million dollars in punitive damages. Both Hartford and Fluke then moved for summary judgment in the declaratory action.

Choosing to apply Washington law, the trial court found no bar to Fluke's entitlement to coverage for the award of compensatory damages. As to punitive damages, however, the court construed the policy's insuring clause as providing no coverage. The court awarded Fluke its fees and costs under the rule of *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Fluke appeals from the ruling denying coverage for punitive damages. Hartford appeals from the ruling granting coverage for compensatory damages and from the award of fees.

*1. Hartford agreed to cover both compensatory and punitive damages.*

■ We begin with the contract. Hartford defends the trial court's construction of the policy as indemnifying Fluke for compensatory damages only, while Fluke contends the coverage includes punitive damages as well. Neither party suggests that the law of California should govern our analysis of this issue, so we apply Washington principles of contract construction. One basic principle is that where policy language is clear and unambiguous, the court must enforce it as written and may not modify it or create ambiguity where none exists. *Allstate Ins. Co. v. Peasley*, 131 Wn.2d 420, 424, 932 P.2d 1244 (1997).

Under Coverage B of the primary policy, "Personal and Advertising Injury Liability," Hartford agreed to pay "those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies." The policy defines "personal injury" as "injury, other than 'bodily injury,' arising out of one or more of the following offenses: . . . b. Malicious prosecution." The policy limit is one million dollars for each occurrence and two million dollars aggregate. The umbrella policy grants similar coverage, with a limit of nine million dollars. The policies contain 34 subsections of exclusions,

including an exclusion of coverage for the "violation of a penal statute." There is no exclusion for punitive damages.

It is undisputed that the policy language quoted above grants coverage for the compensatory damages awarded to Talon and Corby for injury arising out of malicious prosecution by Fluke. The trial court found that the language of the policies, covering damages that the insured becomes legally obligated to pay "because of" personal injury, does not cover punitive damages. The trial court's memorandum opinion reasons that punitive damages are awarded not to compensate but rather to deter and punish, without regard to the extent to which the wronged party was damaged, and therefore they are not damages flowing from the tort. Hence, they are not included under coverage for damages the insured must pay "because of" the injury arising out of the insured's misconduct.

A review of case law from other jurisdictions interpreting virtually identical policy language shows that the trial court's rationale is the minority rule. Most courts do not focus on the meaning of "because of"; they look instead to the phrase "all sums that the insured becomes legally obligated to pay as damages"[1] and interpret it as providing coverage for punitive damages. *See, e.g., Lazenby v. Universal Underwriters Ins. Co.*, 383 S.W.2d 1 (Tenn.1964); *Price v. Hartford Accident & Indem. Co.*, 108 Ariz. 485, 502 P.2d 522 (1972); *Concord Gen. Mut. Ins. Co. v. Hills*, 345 F. Supp. 1090 (D. Me. 1972); *Abbie Uriguen Oldsmobile Buick, Inc. v. United States Fire Ins. Co.*, 95 Idaho 501, 511 P.2d 783 (1973); *Norfolk & W. Ry. v. Hartford Accident & Indem. Co.*, 420 F. Supp. 92 (N.D. Ind. 1976); *Harrell v. Travelers Indem. Co.*, 270 Or. 199, 567 P.2d 1013 (1977); *State v. Glens Falls Ins. Co.*, 137 Vt. 313, 404 A.2d 101 (1979); *Dayton Hudson Corp. v. American Liab. Ins. Co.*, 621 P.2d 1155 (Okla. 1980); *Hensley v. Erie Ins. Co.*, 168 W. Va. 172, 283 S.E.2d 227 (1981); *Skyline Harvestore Sys., Inc. v. Centennial Ins. Co.*, 331 N.W.2d 106 (Iowa 1983); *Providence Wash. Ins. Co. v. City of Valdez*, 684 P.2d 861 (Alaska 1984); *Brown v. Maxey*, 124 Wis. 2d 426, 369 N.W.2d 677 (1985); *United*

---

[1] Hartford's clause uses the words "those sums" instead of "all sums," an insignificant distinction in this context.

*Serv. Auto. Ass'n v. Webb*, 235 Va. 655, 369 S.E.2d 196 (1988); *South Carolina State Budget & Control Bd. v. Prince*, 304 S.C. 241, 403 S.E.2d 643 (1991). *But see Heartland Stores, Inc. v. Royal Ins. Co.*, 815 S.W.2d 39 (Mo. Ct. App. 1991).

The majority rule emphasizes the absence of a specific exclusion for punitive damages and the absence of any other distinction in the policy between compensatory and punitive damages. As explained by the Oregon Supreme Court, a person insured by such a policy would suppose that the term "damages" would include all damages which became, by judgment, a "sum" that the insured became legally obligated to pay—including punitive damages. *Harrell*, 567 P.2d at 1015.

The majority rule is in accord with the interpretive rules followed by Washington courts in construing insurance policies. Insurance contracts should be interpreted in the way that an average insured would read them. *Bowers v. Farmers Ins. Exch.*, 99 Wn. App. 41, 45, 991 P.2d 734 (2000). The trial court's interpretation excluding coverage imputes a legalistic meaning to the phrase "because of" rather than reading it as it is commonly understood, in context with the rest of the insuring clause. And even if the phrase "because of" rendered the contract susceptible to more than one meaning, the ambiguity would be construed against the drafter, the insurer. *See Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 126 Wn.2d 50, 83, 882 P.2d 703 (1994).

Hartford could have achieved the objective it now seeks by inserting the word "compensatory" or by specifically excluding punitive damages. "We will not add language to the policy that the insurer did not include." *American Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 430, 951 P.2d 250 (1998). Following what we perceive to be not only the majority rule, but also the better-reasoned rule and the one most consistent with Washington's rules for interpreting insurance contracts, we conclude the Hartford policy language, by its express terms,

unequivocally covers Fluke not only for the award of compensatory damages, but for the award of punitive damages as well.

 2. *California would invalidate the coverage as against public policy.*

If a contract violates public policy, the contract is void and unenforceable. *Brown v. Snohomish County Physicians Corp.*, 120 Wn.2d 747, 753, 845 P.2d 334 (1993). Hartford contends that any grant of coverage for malicious prosecution damages, whether compensatory or punitive, is ineffective because it violates public policy.

It is undisputed that under California law, it is against public policy to insure against liability for intentional misconduct such as malicious prosecution as well as to insure against liability for punitive damages. California's insurance code provides that "[a]n insurer is not liable for a loss caused by the willful act of the insured." CAL. INS. CODE § 533. California courts have interpreted this statute to prohibit indemnification for punitive damages. *City Prods. Corp. v. Globe Indem. Co.*, 88 Cal. App. 3d 31, 151 Cal. Rptr. 494 (1979). California courts have also concluded that this statute precludes indemnification for liability on account of malicious prosecution, even when an insurance contract expressly promises such coverage. *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 78 Cal. Rptr. 2d 142 (1998).

 ■ Courts need not engage in a choice of law analysis unless an actual conflict exists between the laws of the relevant states. *Burnside v. Simpson Paper Co.*, 123 Wn.2d 93, 103, 864 P.2d 937 (1994). The trial court, having decided there was no coverage for punitive damages under the contract, addressed itself only to the issue of compensatory damages, and found California law in conflict with Washington's. The trial court chose Washington law and applied it to declare that Fluke is entitled to coverage for the compensatory damage award. Because we have held that the contract grants coverage for punitive damages, we must determine whether a conflict of law exists as to that issue as well.

*3. Indemnification for malicious prosecution and punitive damages is not against public policy in Washington.*

■ Washington's statutes do not make punitive damages uninsurable, and they do not preclude coverage for intentional torts such as malicious prosecution. Absent a statute, Washington courts are reluctant to invoke public policy as a reason to limit or avoid express contract terms. *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 481, 687 P.2d 1139 (1984). One reason for the reluctance is the recognition that among the branches of government, the judiciary is the least capable of receiving public input and resolving broad policy questions. *Burkhart v. Harrod*, 110 Wn.2d 381, 385, 755 P.2d 759 (1988). Thus, our courts have relied on policy to strike down insurance provisions only when that policy "pervades our entire scheme of insurance legislation." *Mutual of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 208, 643 P.2d 441 (1982). Washington courts are also unreceptive to arguments made by an insurance company that the coverage it agreed to provide is void as against public policy. *See American Nat'l Fire Ins. Co. v. B&L Trucking & Constr. Co.*, 134 Wn.2d 413, 430, 951 P.2d 250 (1998) (the insurer "drafted the policy language; it cannot now argue its own drafting is unfair").

Although its contract expressly insures against liability for malicious prosecution, Hartford contends that such coverage is against Washington's public policy because malicious prosecution is an intentional tort. Hartford derives its public policy argument from three cases: *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. No. 8*, 20 Wn. App. 261, 579 P.2d 1015 (1978); *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 751 P.2d 282 (1988); and *American Home Assurance Co. v. Cohen*, 124 Wn.2d 865, 881 P.2d 1001 (1994). The policy at issue in *Unigard* covered damages caused by accident, but excluded coverage for intentionally caused injury. The court held there was no coverage for damage resulting from an intentionally set fire, because it was not an accident. The court noted that "public policy

prevents an insured from benefitting from his wrongful acts . . . ." *Unigard*, 20 Wn. App. at 265. Similarly, in *Detweiler*, in examining whether a bizarre shooting incident was an "accident" under the policy, the Washington Supreme Court observed that intentionally inflicted injuries are generally considered "a risk which it would be against public policy to insure." *Detweiler*, 110 Wn.2d at 105.

The policies the courts were construing in both *Unigard* and *Detweiler* provided that the insured's damages had to be caused by an accident in order to be covered. The courts were called upon to decide only whether the cause of a particular type of damage was best described as an accident or as an intentional act. The statements regarding public policy do not supply authoritative precedent for analyzing Hartford's coverage because it is not accident-based and because it explicitly covers "offenses" involving intentional acts.

 In *Cohen*, the question was whether a professional liability policy could provide lesser coverage for sexual misconduct than for non-sexual misconduct. The court concluded that lesser coverage did not violate public policy but also stated that in general, "it is against public policy to insure against liability arising from the intentional infliction of injury on the person of another." *Cohen*, 124 Wn.2d at 871. Again, the quoted comment was extraneous to the court's holding. And it is closely followed by another general observation: "Washington courts rarely invoke public policy to override express terms of an insurance policy." *Id.* at 873. We conclude the cases cited by Hartford do not require invalidation of a contract that expressly insures against liability for malicious prosecution.

 Some jurisdictions hold that allowing coverage for punitive damages is against public policy because to do so would thwart the policies of deterrence and punishment behind punitive damages. *See Northwestern Nat'l Cas. Co. v. McNulty*, 307 F.2d 432 (5th Cir. 1962) (in considering whether punitive damages were insurable under Virginia

law, the court looked to the punishment and deterrence policies behind punitive damages), *superseded by statute*, VA. CODE ANN. § 38.2-227. But Washington does not have a policy of imposing punitive damages to punish and deter wrongdoing. Washington's only expressed policy regarding punitive damages is that they are not favored. Our courts view them as "a penalty generally reserved for criminal sanctions," inappropriate in civil cases because they give the plaintiff a windfall beyond full compensation. *Dailey v. North Coast Life Ins. Co.*, 129 Wn.2d 572, 574, 919 P.2d 589 (1996). We will not assume that being covered for punitive damages encourages insureds to commit egregious wrongs. Examining the evidence and making a judgment on that social question is best left to the Legislature.

The Hartford policy promised coverage for those sums Fluke became obligated to pay either as compensatory or punitive damages arising from malicious prosecution. Hartford collected a premium for that coverage. An insured who has paid a premium ordinarily has a legitimate and enforceable expectation of receiving the coverage promised. *See Thiringer v. American Motors Ins. Co.*, 91 Wn.2d 215, 220, 588 P.2d 191 (1978). We hold that coverage for compensatory or punitive damages arising from malicious prosecution is not against public policy in Washington.

*4. Washington has the most significant relationship with the contract.*

Because the coverage in Fluke's policy is void as against public policy under California law but not under Washington law, this case presents an actual conflict of laws. The trial court chose to apply the law of Washington, the place where the contract was made. Hartford argues that conflict of law principles mandate choosing the law of California because it is the location of the covered risk.

When one party timely invokes foreign law, and the foreign law truly conflicts with the law of the forum, the court must determine which jurisdiction has the "most significant relationship" to the issue in dispute. RESTATEMENT (SECOND) CONFLICT OF LAWS § 188(1) (1971); *Burnside*, 123

Wn.2d at 100. When the issue involves a contract, the court will use the guidelines set forth in section 188 of the *Restatement of Conflict of Laws*. *Potlatch No. 1 Fed. Credit Union v. Kennedy*, 76 Wn.2d 806, 809, 459 P.2d 32 (1969). Under section 188, when the parties have not made an effective choice of applicable law, the court will take into account these contacts:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 188(2) (1971). The contacts are to be evaluated according to their relative importance with respect to the particular issue, and in conjunction with the umbrella principles set forth in section 6 of the Restatement. RESTATEMENT (SECOND) CONFLICT OF LAWS § 188(2) (1971). Under section 6:

(1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

RESTATEMENT (SECOND) CONFLICT OF LAWS § 6 (1971).

 Hartford argues that California, as the site of the

injury, necessarily has the most significant contact with Fluke's insurance policy, citing *Canron, Inc. v. Federal Ins. Co.*, 82 Wn. App. 480, 918 P.2d 937 (1996). Canron, a Canadian corporation, shipped toxic waste from a plant in British Columbia to a treatment facility in Washington State. The EPA later designated Canron as a potentially responsible party in respect to the cleanup of the Washington site. Canron sued its insurer, Federal, in Washington for a declaration of coverage for the cleanup claim. Federal invoked the law of Quebec, the place where the parties entered into the insurance contract. This court, affirming the application of Washington law, held that the "ministerial acts of negotiating and executing the contracts" in Quebec were insignificant in comparison to Washington's interest in seeing the hazardous waste site cleaned up. *Id.* at 493.

According to Hartford, *Canron* indicates that the state where the damage and tort litigation occurred has the paramount interest in the outcome of a coverage dispute and is for that reason entitled to have its law applied. But *Canron* is an application of the most significant relationship test in an insurance coverage dispute; it does not hold that any particular contact is always paramount. The court noted that British Columbia would be best considered the location of the "subject matter" of the contract because the hazardous wastes originated there, but assumed British Columbia law was identical to Washington law because neither party presented British Columbia law. *Id.* at 494. Quebec's connection to the insurance contract was far less significant than Washington's connection to the contract between Hartford and Fluke. Fluke is a Washington corporation, while neither Canron nor Federal was a Quebec corporation. For these reasons, *Canron* does not require choosing, in a coverage dispute, the law of the state where the injury occurred.

Hartford also contends that California has the most significant relationship to the contract because it is the principal location of the insured risk. Section 193 of the

Restatement specifies that the location of the insured risk should be given greater weight than other contacts, when that risk can be located, at least principally, in a single state. RESTATEMENT (SECOND) CONFLICTS OF LAWS § 193 (1971).

Section 193 does not control multiple risk policies where the risks are scattered among several states. *Id.* cmts. a and b. But if a contract insures several pieces of property in specific locations, a court may construe that contract as several distinct policies, each governed by the law of the place where the property is located. *Id.* cmt. f. A California court utilized this aspect of section 193 in deciding to apply the law of California in a coverage dispute. A defective battery exploded in California, but the insured manufacturer was located in Wisconsin and had purchased the policy there. *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App. 4th 637, 17 Cal. Rptr. 2d 713 (1993). The court found that the manufacturer, Johnson Controls, "did not obtain a single policy" which it could expect would be governed by the law of Wisconsin; "rather, Johnson Controls obtained separate policies which insure separate risks located in any number of states where the corporation does business." *Id.* at 648.

In concluding that the manufacturer would reasonably expect its right to indemnity to vary according to the state where the underlying injury occurred, the California court ascribed significance to the fact that the primary policy contained individual amendatory endorsements for 11 separate states. *Stonewall*, 14 Cal. App. 4th at 647-48. The court also noted extensive evidence of underwriting submissions indicating that the complexity of the corporation's activities was taken into account in the negotiation for excess coverage. *Stonewall*, 14 Cal. App. 4th at 647. Nothing in the present record indicates that Fluke reasonably should expect the multiple risk policy it purchased to be treated as an amalgamation of separate policies, each insuring separate risks in the various states where Fluke does business. There is no indication that Hartford took any particular location into consideration when establishing the cost of the policy. One page of the record lists a series of special endorsements for certain states, giving only the reference numbers but not the substance of the endorsements. This mere list does not support a conclusion that the

parties negotiated on the basis of particular risks located in these particular states. Fluke does have manufacturing facilities in California, as well as in other locations, but its California facilities were not implicated in Fluke's prosecution of the patent infringement suit against Talon and Corby. The particular scenario that gave rise to this dispute, a malicious prosecution verdict following an unsuccessful patent infringement suit by Fluke, could have occurred anywhere in the world. The locations of the risk covered by the Hartford policy are, thus, unidentifiable and infinite. For this reason section 193 of the Restatement does not dictate recognizing California as the location of a unique risk. *See Canron*, 82 Wn. App. at 494 n.7.

Washington authority, including the cases cited by Hartford, points to the Restatement factors in sections 188 and 6 to determine what law to apply. Except for the location of the insured risk, which as discussed above does not favor the law of any particular jurisdiction, the factors set out in section 188 overwhelmingly favor the application of Washington law. The execution, negotiation and performance of Hartford's contract with Fluke all took place in Washington. Fluke has its headquarters in Washington, and Hartford also has offices in Washington. Many of the factors listed in Restatement section 6 also favor Washington law, particularly "the protection of justified expectations." RESTATEMENT (SECOND) CONFLICT OF LAWS § 6(2)(d) (1971).

The only section 6 factor that Hartford singles out as supporting application of California law is the consideration of the competing policy interests of the two states. *See Burnside v. Simpson Paper Co.*, 66 Wn. App. 510, 520, 832 P.2d 537 (1992), *aff'd*, 123 Wn.2d 93, 864 P.2d 937 (1994). California has a specific policy interest implicated by this case; by statute punitive damages and damages caused by the intentional tort of malicious prosecution are not insurable there. Hartford contends that Washington should defer to California's policies since Washington has declared no opposite public policy of its own.

Hartford relies on a Kansas case involving a car accident in that state in which the court chose Kansas law to govern insurance coverage, although the insurance contract was entered into in Indiana. *Hartford Accident & Indem. v. American Red Ball Transit Co.*, 262 Kan. 570, 574, 938 P.2d

1281 (1997). Like California, Kansas has a public policy against insuring punitive damages. The court emphasized the policy interest of Kansas, as the forum state, in preventing intentional wrongdoers from using insurance to mitigate the sting of punitive damages:

> Failure to apply Kansas law would establish an undesirable precedent for other tort and product liability actions. In any product liability action which involves an out-of-state manufacturer, the manufacturer could avoid the application of Kansas public policy where the manufacturer had contracted outside the State of Kansas for insurance of punitive damages. This would result in the uneven application of the public policy.

*Id.* at 1286 (quoting *St. Paul Surplus Lines Ins. Co. v. International Playtex, Inc.*, 245 Kan. 258, 777 P.2d 1259 (1989)).

■ Uneven application of public policy is inevitable when states have conflicting policies. Our courts evaluate competing policy interests in the context of section 188's "most significant relationship" inquiry, an inquiry the Kansas court did not undertake because it concluded its own law required enforcement of the settled policy of the forum state. Under sections 188 and 6, California's expressed public policy does not outweigh other factors pointing to Washington as having the most significant relationship with the contract. *See Dairyland Ins. Co. v. State Farm Mut. Auto. Ins. Co.*, 41 Wn. App. 26, 30-31, 701 P.2d 806 (1985) (Washington rule invalidating an exclusion does not apply to coverage for car accident that occurred in Washington, because the only contacts with the insurance policy were with Idaho, whose law recognized the exclusion).

California itself, unlike the Kansas court, has not made its own public policy the paramount factor in choice of law. In *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 78 Cal. Rptr. 2d 142 (1998), the California Court of Appeals voided a policy's express grant of coverage for malicious prosecution, invoking California's statutory rule against coverage for willful acts. But the court noted that coverage for damages arising from an insured's willful acts "is not

precluded" in other states where greater emphasis is placed on other policy choices. *Id.* at 499 n.31. Washington, it is fair to say, is a jurisdiction that places greater emphasis on the enforcement of insurance contracts than upon finding public policy reasons to invalidate an express grant of coverage. *See Findlay v. United Pac. Ins. Co.*, 129 Wn.2d 368, 380, 917 P.2d 116 (1996) (the court will not rewrite a clear contract between the parties, but will enforce the reasonable expectations of the parties based on the language of the insurance contract); *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 124 Wn.2d 816, 821, 881 P.2d 986 (1994) (the law of contracts is designed to enforce expectations created by agreement).

Hartford also contends deference to California's policy is required by *Kammerer v. Western Gear Corp.*, 96 Wn.2d 416, 635 P.2d 708 (1981). California plaintiffs sued a Washington manufacturing corporation in Washington and proved fraudulent misrepresentation in a contract, leading to an award of punitive damages under the law of California. Our Supreme Court, in *Kammerer*, upheld the award of punitive damages, acknowledging an obligation to further California's specific and obvious interest in protecting its citizens against fraud. *Id.* at 423. But in *Kammerer*, unlike this case, California was the state with the most significant relationship with the contract. And the parties in *Kammerer* had agreed California law would apply, whereas the Fluke policy has no choice of law provision. We do not read *Kammerer* as holding that when one state has a public policy defined by statute on a particular issue and the other state does not, a court must always choose the law of the state with the statutorily defined interest. The absence of a statutory public policy in Washington disapproving coverage for willful acts justifies parties to a contract governed by Washington law in expecting they will get the coverage they paid for, without exclusions for willful acts implied from the public policy of other states.

In summary, the factors identified in sections 188 and 6 of the Restatement control the determination of choice of law.

Those factors weigh in favor of Washington law. Hartford, having promised to cover those sums that Fluke became obligated to pay as damages because of malicious prosecution, and having failed to exclude punitive damages from the reach of its insuring clause, must cover Fluke for both types of damages Fluke became obligated to pay as a result of the California jury verdict.

5. *Fluke is entitled to attorney fees under Olympic Steamship.*

 The trial court awarded fees to Fluke under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991). Hartford challenges the award to the extent that it includes fees Fluke incurred defending against a declaratory action Hartford filed in California. Hartford's California lawsuit raised the same coverage issues as the Washington suit that gave rise to this appeal. Fluke's attorneys in California obtained dismissal of Hartford's action in favor of the first-filed Washington suit. We review a trial court's award of attorney fees for abuse of discretion. *Schumacher Painting Co. v. First Union Management, Inc.*, 69 Wn. App. 693, 701, 850 P.2d 1361, *review denied*, 122 Wn.2d 1013 (1993).

 Hartford asserts, citing federal cases, that a Washington court may not award fees incurred by Fluke in another jurisdiction. *See Lundin v. Mecham*, 980 F.2d 1450 (D.C. Cir. 1992); *Home Placement Serv. Inc. v. Providence Journal Co.*, 739 F.2d 671 (1st Cir. 1984); *Stryker Corp. v. Intermedics Orthopedics, Inc.*, 898 F. Supp. 116 (E.D.N.Y. 1995). These cases do not establish a general rule precluding recovery of fees incurred in another court. Under *Olympic Steamship*, Fluke is entitled to recover fees for legal action the insured is compelled to assume to obtain the full benefit of promised coverage. In support of its award of attorney fees, the trial court found that the fees billed to Fluke, including the fees of the California attorneys, were reasonable and "were necessarily incurred in an effort to establish insurance coverage in this litigation." The finding of necessity, unchallenged by Hartford on appeal,

adequately justifies including the California attorney fees in the *Olympic Steamship* award. We affirm the trial court's award of attorney fees to Fluke. Fluke is also entitled, under *Olympic Steamship*, to an award of its fees and costs for this appeal.

The order of summary judgment declaring Fluke covered for compensatory damages is affirmed. The order of summary judgment in favor of Hartford on the issue of punitive damages is reversed. The trial court is directed to enter summary judgment declaring that Fluke is covered for punitive damages. The trial court's award of fees to Fluke is affirmed. Fluke is awarded fees on appeal.

AGID, C.J., and KENNEDY, J., concur.

Review granted at 143 Wn.2d 1013 (2001).