[No. 70519-4. En Banc.]
Argued September 11, 2001. Decided November 21, 2001.

FLUKE CORPORATION, *Respondent*, v. THE HARTFORD ACCIDENT & INDEMNITY COMPANY, *Petitioner*.

*K.C. Webster* (of *Phillips & Webster, P.L.L.C.*), for petitioner.

*G. Val Tollefson, Matthew R. Kenney,* and *Randall T. Thomsen* (of *Danielson, Harrigan & Tollefson*), for respondent.

*Linda B. Clapham* and *Robert L. Israel* on behalf of Certain Underwriters at Lloyds of London and Certain London Market Companies, amici curiae.

*Pamela A. Okano* on behalf of Alliance of American Insurers and State Farm Mutual Automobile Insurance Company, amici curiae.

*Craig H. Bennion* and *Thomas M. Jones* on behalf of American International Companies, amicus curiae.

*Debra L. Stephens* and *Bryan P. Harnetiaux* on behalf of Washington State Trial Lawyers Association, amicus curiae.

*Charles C. Gordon, James R. Murray, Jeffrey I. Tilden,* and *Christie L. Snyder* on behalf of Costco Wholesale Corporation, Puget Sound Energy, Inc., and Weyerhaeuser Company, amici curiae.

OWENS, J. — The Hartford Accident and Indemnity Company challenges the decision of the Court of Appeals that, under the terms of the Commercial General Liability (CGL) policy that Hartford sold to Fluke Corporation, Hartford was obligated to pay both the compensatory and punitive damages that a California jury awarded against Fluke in a malicious prosecution action. In this declaratory judgment action, the trial court and the Court of Appeals concluded that public policy in Washington did not negate the CGL policy's unambiguous grant of liability coverage for malicious prosecution. *See Fluke Corp. v. Hartford Accident & Indem. Co.*, 102 Wn. App. 237, 7 P.3d 825 (2000). However, contrary to the trial court's conclusion, the Court of Appeals held that the policy covered awards of punitive damages against Fluke, and it further determined that coverage for punitive damages did not contravene a clear public policy in

this state regarding such insurance. Because California law precludes coverage both for intentional acts (including malicious prosecution) and for punitive damages,[1] Hartford invoked California law, but the Court of Appeals agreed with the trial court that Washington law, not California law, governed this declaratory judgment action.

We affirm the Court of Appeals on all issues.

## FACTS

Fluke, a manufacturer of electrical equipment, is a Washington corporation having its principal place of business in Snohomish County, Washington. From 1954 to April 30, 1994, Fluke contracted for insurance coverage with Hartford, a foreign corporation with offices in Washington. Relevant to the present case is Fluke's insurance contract with Hartford for primary and umbrella coverage for the period April 1, 1988, to April 1, 1989. Under that contract (hereinafter the policy),[2] Hartford provided primary CGL coverage with limits of $1 million per occurrence and $2 million aggregate. In addition to Coverage A for "Bodily Injury and Property Damage Liability," the CGL policy included Coverage B for "Personal and Advertising Injury Liability." Clerk's Papers (CP) at 589, 591. That coverage obligated Hartford to "pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' . . . to which this insurance applies." CP at 591. The policy defined "personal injury" as "injury, other than 'bodily injury,' arising out of . . . [m]alicious prosecution."[3] Additionally, Hartford sold Fluke an umbrella personal liability policy with essentially identical coverage but with policy limits of $9 million.

---

[1] *See Fluke*, 102 Wn. App. at 245 (citing Cal. Ins. Code § 533; *City Prods. Corp. v. Globe Indem. Co.*, 88 Cal. App. 3d 31, 151 Cal. Rptr. 494 (1979); *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 78 Cal. Rptr. 2d 142 (1998)).

[2] For the 1988-89 period, Fluke paid Hartford "total premiums in excess of $1 million dollars [sic] for this insurance coverage," with "the liability portion exceed[ing] $360,000." Clerk's Papers (CP) at 556.

[3] CP at 597. Other covered "offenses" include "[f]alse arrest, detention or imprisonment," "[w]rongful entry into, or eviction of a person from, a room, dwelling or premises that the person occupies," and "[o]ral or written publication

In May 1988, Fluke filed a patent infringement suit in federal district court in California against Talon Instruments, a California corporation. Fluke amended its complaint in April 1989 to include Robert Corby, the president, director, and principal shareholder of Talon. Following a jury trial in May 1992, judgment was entered for the defendants.

In November 1993, Talon and Corby filed a malicious prosecution suit against Fluke in Los Angeles County Superior Court. Fluke tendered defense of the suit to Hartford, and in January 1994, Hartford advised Fluke that the policy covered malicious prosecution. However, in February 1996, Hartford sent Fluke a letter disavowing coverage. Consequently, Fluke brought a declaratory judgment action against Hartford in Snohomish County Superior Court in July 1996, seeking a determination of coverage. In December 1996, Fluke and Hartford agreed to stay the declaratory judgment action until a final judgment had been entered in the California malicious prosecution action. In January 1997, the malicious prosecution action went to trial, and in March 1997, the jury returned verdicts for Talon and Corby, awarding a total of $2 million in compensatory damages and $4 million in punitive damages.

In June 1997, with the stay still pending in the declaratory judgment action in Snohomish County, Hartford filed a declaratory judgment action in California against Fluke, Talon, and Corby. In June 1998, the California court stayed Hartford's suit in light of the declaratory judgment action in Snohomish County.

Hartford and Fluke moved for summary judgment in the present declaratory judgment action. Applying Washington law, the trial court concluded that the policy's coverage for malicious prosecution did not contravene public policy but that the policy provided coverage for compensatory damages only, not for punitive damages.

---

of material that slanders or libels a person or organization." CP at 597.

Fluke appealed. The Court of Appeals affirmed the award of compensatory damages and reversed the trial court's denial of coverage for punitive damages. *Fluke*, 102 Wn. App. 237. This court granted Hartford's petition for review.

## ISSUES

(1) Is providing insurance coverage for the intentional tort of malicious prosecution contrary to public policy in Washington?

(2) a. Does the policy at issue cover punitive damages?

b. If so, is such coverage contrary to public policy in Washington?

(3) If insurance coverage for malicious prosecution and punitive damages is not contrary to public policy in Washington (as it is, by statute, in California), should Washington law or California law apply to this declaratory judgment action?

## ANALYSIS

■ *Standard of Review*. Hartford contends (1) that public policy requires invalidation of the liability insurance that it sold Fluke for malicious prosecution, (2) that the insurance policy did not cover punitive damages but that, even if it did, public policy would require invalidation of such coverage, and (3) that, if Washington law conflicts with California law, the latter should govern the coverage dispute. Review of these purely legal issues is de novo. *Island County v. State*, 135 Wn.2d 141, 160, 955 P.2d 377 (1998).

*Insurance Coverage for Malicious Prosecution in Washington*. The policy expressly insures Fluke against liability for malicious prosecution: "We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . injury . . . arising out of . . . [m]alicious prosecution." CP at 591, 597. Hartford contends that this explicit promise must be negated because Washington public policy forbids insuring against an intentional harm.

■ As this court has previously observed, "Washington courts rarely invoke public policy to *override* express terms of an insurance policy."[4] We have not previously invalidated on public policy grounds any affirmative grant of coverage made by an insurer. Public policy has, however, been invoked to expand coverage by nullifying policy *exclusions* in two areas: "[o]ne relates to underinsured motorist insurance (UIM) coverage authorized under RCW 48.22.030; the other involves the Financial Responsibility Act, RCW 46.29." *Am. Home Assurance Co. v. Cohen*, 124 Wn.2d 865, 874 & n.15, 881 P.2d 1001 (1994) (citing *Mut. of Enumclaw Ins. Co. v. Wiscomb*, 97 Wn.2d 203, 643 P.2d 441 (1982); *Brown v. Snohomish County Physicians Corp.*, 120 Wn.2d 747, 756-57, 845 P.2d 334 (1993); *Schab v. State Farm Mut. Auto. Ins. Co.*, 41 Wn. App. 418, 423, 704 P.2d 621 (1985)). But as the *Cohen* court noted, this court thereafter refused to extend the holding in the UIM and financial responsibility cases "to hold that a family exclusion clause in a homeowner's liability policy was void on public policy grounds." *Cohen*, 124 Wn.2d at 874 (citing *State Farm Gen. Ins. Co. v. Emerson*, 102 Wn.2d 477, 687 P.2d 1139 (1984)). In *Emerson*, the court concluded that, " '[a]bsent prior expression of public policy from either the Legislature or prior court decisions, our inquiry as to whether the family exclusion clause clearly offends the public good must be answered in the negative.' " *Id.* at 875 (quoting *Emerson*, 102 Wn.2d at 483).

In those Washington cases in which public policy has served to enhance coverage by overriding policy exclusions, the courts have relied on a public policy "convincingly expressed" in state statutes. *Cohen*, 124 Wn.2d at 874. But, here, Hartford can point to no statute or judicial decision suggesting that this state discountenances the selling of CGL insurance for the "offenses" listed in Coverage B—that

---

[4] *Am. Home Assurance Co. v. Cohen*, 124 Wn.2d 865, 873, 881 P.2d 1001 (1994) (emphasis added). Our legislature has defined "[t]he business of insurance" as "one affected by the public interest," RCW 48.01.030, and has described casualty insurance as coverage for harms "properly the subject of insurance," provided that "such insurance is not contrary to law or public policy." RCW 48.11.070(10). The legislature has not otherwise defined the scope of "public policy" in this area.

is, for a number of intentional torts, including not only malicious prosecution but also false arrest, wrongful entry or eviction, and libel or slander. The first form for such coverage was introduced in 1976 as an endorsement to the CGL Coverage Form, but "[b]eginning with the 1986 ISO [Insurance Services Office] Commercial General Liability Coverage Form (the '1986 Form'), coverage for personal injury and advertising injury liability was inserted into the policy itself, rather than being added as a supplement to the policy." Peter J. Kalis, Thomas M. Reiter & James R. Segerdahl, Policyholder's Guide to the Law of Insurance Coverage § 8.01 (Supp. 2001). The policy at issue in the present case is the 1986 Form. Given that this coverage has been plainly marketed and sold for at least 25 years, commentators typically note, when remarking on the possible public policy prohibitions against coverage for intentional torts, that "coverage is provided for intentional torts such as 'malicious prosecution.'" *Id.* § 6.02. The coverage enables businesses to protect themselves—for example, by detaining shoplifters or preserving intellectual property rights—without fear of lawsuits by offenders. As one commentator has observed, because "[i]n the typical cases in which these offenses are alleged, coverage is clearly available," the disputes that arise generally turn on whether the coverage extends to a closely related tort. *Id.* § 8.02. Just such a dispute is exemplified in a Washington case, *R.A. Hanson Co. v. Aetna Insurance Co.*, 26 Wn. App. 290, 612 P.2d 456 (1980). There, the Court of Appeals did not question the availability of the coverage for malicious prosecution en route to its decision that "[i]nsurance against malicious prosecution does not cover abuse of process." *Id.* at 295.

In sum, Hartford can identify no public policy clearly expressed in Washington statutes or case law that would justify overriding the policy's explicit coverage for malicious prosecution. Lacking that kind of support, Hartford relies on decisions that cite public policy to *uphold* coverage provisions. However, those decisions interpreted other

types of insurance policies and, because they concerned policy limitations and exclusions, did not reduce the explicit coverage that the insured had purchased. *See Cohen*, 124 Wn.2d at 881 ("hold[ing] that [in professional liability policy] the coverage limits placed on claims involving sexual misconduct on the part of an insured psychologist do not violate the public policy of this state"); *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 105, 751 P.2d 282 (1988) (recognizing that limitation of coverage in automobile liability policy to " 'accident[s]' " was "founded on the elemental proposition that injuries will not be deemed caused by accident where the injuries are intentionally inflicted, this generally being considered a risk which it would be against public policy to insure"); *Unigard Mut. Ins. Co. v. Spokane Sch. Dist. No. 81*, 20 Wn. App. 261, 265, 579 P.2d 1015 (1978) (applying intentional acts exclusion in homeowner's policy to child who deliberately set fire to school, recognizing "that public policy prevents an insured from benefitting from his wrongful acts").

Nor do this court's general observations about public policy and intentional torts support Hartford's position that the coverage for malicious prosecution should be invalidated on public policy grounds.[5] The Court of Appeals persuasively distinguished those cases from the present case. In *Unigard* and *Detweiler*, "[t]he courts were called upon to decide only whether the cause of a particular type of damage was best described as an accident or as an intentional act." *Fluke*, 102 Wn. App. at 247. However, Hartford's coverage "is not accident-based and . . . it explicitly covers 'offenses' involving intentional acts." *Id.* And in *Cohen*, although the court made the general statement that " 'it is against public policy to insure against liability arising from the intentional infliction of injury on the person of another,' " that statement was dicta, given that the court had decided the case on the grounds that "lesser

---

[5] "[I]t should be noted that there is no public policy that acts as a blanket prohibition against [insurance coverage for] *all* so-called intentional torts." Peter J. Kalis, Thomas M. Reiter & James R. Segerdahl, Policyholder's Guide to the Law of Insurance Coverage § 6.02 (Supp. 2001) (emphasis added).

coverage for sexual misconduct than for non-sexual misconduct. . . . did not violate public policy." *Id.* (citing *Cohen*, 124 Wn.2d at 871).

██ We conclude that coverage for malicious prosecution does not violate public policy in Washington. The insurance provision is clear and the type of coverage well established, and the only Washington case that has considered such coverage accepted its validity. The general statements in earlier cases about public policy and intentional torts simply do not provide strong precedent for finding that the marketing of this type of coverage should now be nullified as contrary to public policy. The paramount public policy here is the commitment to upholding the plain language of contracts. Notably, while the Hartford policy includes an exclusion under Coverage A for " '[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured," it contains no language limiting Coverage B's explicit coverage for malicious prosecution. CP at 589.

██ *Insurance Coverage for Punitive Damages.* The threshold question is whether the Hartford policy provides coverage for the punitive damages assessed against Fluke. Again, we look at the insuring agreement: "We will pay those sums that the insured becomes legally obligated to pay as damages because of . . . injury . . . arising out of . . . [m]alicious prosecution." CP at 591, 597. Because the policy uses the general term "damages," makes no distinction between compensatory and punitive damages, and contains no exclusion for the payment of punitive damages, the insuring agreement appears to be a straightforward promise to indemnify Fluke for all damages, compensatory or punitive, that Fluke becomes legally bound to pay.

Given the clarity of that promise, the trial court focused on the qualifying phrase "because of . . . injury . . . arising out of . . . [m]alicious prosecution" and concluded that the "because of" phrase narrowed the insuring grant to cover only compensatory damages:

> The trial court's memorandum opinion reasons that punitive damages are awarded not to compensate but rather to deter and punish, without regard to the extent to which the wronged party was damaged, and therefore they are not damages flowing from the tort.

*Fluke*, 102 Wn. App. at 243. As the Court of Appeals observed, the trial court "impute[d] a legalistic meaning to the phrase 'because of' rather than reading it as it is commonly understood, in context with the rest of the insuring clause." *Id.* at 244. While the punitive damages were not awarded to compensate Talon and Corby for the injury (but to deter and punish Fluke), the punitive damages were nevertheless awarded "because of" the "injury" to Talon and Corby "arising out of" Fluke's malicious prosecution of the patent infringement suit. We agree with the Court of Appeals that Hartford's policy plainly covers *all* damages awarded against Fluke in the malicious prosecution action.

■ Hartford contends that, even if the policy were interpreted as covering punitive damages, the coverage would have to be negated because Washington public policy forbids shielding the insured from the burden of punitive damages. But this state has articulated no such public policy, either by statute or judicial decision. Rather, Washington courts regard such damages as inappropriate in civil cases because they encroach upon criminal sanctions. *See Dailey v. N. Coast Life Ins. Co.*, 129 Wn.2d 572, 574, 919 P.2d 589 (1996). Amici argue on behalf of Hartford that this state's disapproval of punitive damages should result in a finding that coverage for punitive damages contravenes public policy. A more convincing inference from this state's disapproval of punitive damages, however, is that a losing party in a civil suit should not be assessed such penalties. We decline to conclude that insuring oneself against a disfavored penalty runs counter to public policy.

We thus affirm the conclusion of the Court of Appeals that punitive damages coverage does not violate public policy in this state.

■ *Applicability of Washington or California Law.* In

light of California's statutory preclusion of insurance coverage for malicious prosecution and punitive damages, Hartford has invoked California law. Our determination that such coverage does not violate public policy in this state creates a clear conflict between California and Washington law. Because the CGL policy contains no choice of law provision, we must determine whether California or Washington has the "most significant relationship" to this coverage dispute. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188(1) (1971); *Potlatch No. 1 Fed. Credit Union v. Kennedy*, 76 Wn.2d 806, 809, 459 P.2d 32 (1969).

■ Section 188(2) of the *Restatement* sets forth five contacts that are to be considered in determining the applicable law:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

The five "contacts are to be evaluated according to their relative importance with respect to the particular issue," RESTATEMENT § 188(2), and in accord with the general underlying principles set out in section 6(2) of the *Restatement*:

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

■ Applying this framework, the Court of Appeals con-

cluded that the section 188(2) factors "overwhelmingly favor the application of Washington law." *Fluke*, 102 Wn. App. at 252. The court noted that factors (a), (b), and (c)—the place of execution, negotiation, and performance of the insurance contract—all pointed to Washington, and that, as to factor (e), not only does Hartford have offices in Washington, but Fluke was incorporated and headquartered in this state. *Id*. Regarding the section 6 factors, Hartford has argued that factor (b) weighs in favor of California because it has expressed by statute its policies concerning the insurability of intentional acts and punitive damages. But as the Court of Appeals reasoned, "[t]he absence of a statutory public policy in Washington disapproving coverage for willful acts justifies parties to a contract governed by Washington law in expecting they will get the coverage they paid for, without exclusions for willful acts implied from the public policy of other states." *Id*. at 254. In sum, the factors in sections 6 and 188 weigh more heavily in favor of applying Washington law to this insurance contract between Hartford and Fluke.

 Hartford makes the additional argument that section 193 of the *Restatement* should govern this court's determination of which state has the most significant relationship to the insurance contract. Section 193 provides as follows:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of *the state which the parties understood was to be the principal location of the insured risk* during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

(Emphasis added.) Hartford contends that, because California was "the principal location of the insured risk" (that is, the place where Fluke, by filing the patent infringement suit, risked a reciprocal suit for malicious prosecution), then section 193 requires application of California law.

Hartford invokes comment *f* to section 193, which suggests that, where a contract insures multiple risks (for example, several different properties in different states), a court could construe the contract as a series of agreements, each governed by the law in which the particular risk is located. Comment *f* is not applicable here, however, because it presumes that, at the time of contracting, the risks could be localized in particular states. As the Court of Appeals emphasized, the location of the patent infringement and malicious prosecution suits could not have been "understood" by the parties at the time of contracting, as section 193 requires; rather, at the time of contracting, the locations of Fluke's vulnerability to a malicious prosecution were "unidentifiable and infinite." *Fluke*, 102 Wn. App. at 252. There is thus no reason to apply section 193 to this choice of law dispute.

We affirm the Court of Appeals decision to apply Washington law in this declaratory judgment action.

## CONCLUSION

The Court of Appeals resolved all issues in this case in favor of enforcing the plain language of the CGL policy that Hartford sold to Fluke. We likewise hold that the CGL policy requires Hartford to indemnify Fluke for all damages arising from the adverse judgment in Talon's malicious prosecution suit. The policy plainly covered Fluke's liability for malicious prosecution, and just as plainly, it promised indemnification for "damages" without limiting payment to compensatory damages or expressly excluding punitive damages. In the absence of any prior statutory or judicial expressions of public policy regarding the insurability of a business against liability for malicious prosecution, we cannot permit Hartford to raise public policy as a sword to sever the bargain between insurer and insured. Further, as did the trial court and Court of Appeals before us, we conclude that Washington has the most significant relationship to the insurance contract and that, consequently,

Washington law, not California law, must apply to the coverage dispute. Finally, we affirm the award of attorney fees to Fluke at trial and on appeal, and under *Olympic Steamship Co. v. Centennial Insurance Co.*, 117 Wn.2d 37, 811 P.2d 673 (1991), we grant Fluke's additional request for fees incurred before this court.

ALEXANDER, C.J., and SMITH, JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, and CHAMBERS, JJ., concur.