Filed 3/19/14  Lilien v. Markle CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALLISON LOVELL LILIEN, | D063397 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00059139-CU-NP-NC) |
| JOHN R. MARKLE, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert Dahlquist, Judge.  Affirmed.

Bruce Cornblum for Plaintiff and Appellant.

Meador & Engle and Alan Engle for Defendant and Respondent.

Plaintiff and appellant Allison Lovell Lilien (Allison) appeals the order granting the anti-SLAPP motion brought under Code of Civil Procedure section 425.16[1] by

---

1      All statutory references are to the Code of Civil Procedure unless indicated otherwise.  Section 425.16 is commonly referred to as the anti-SLAPP statute.  (*Siam v. Kizilbash* (2005) 130 Cal.App.4th 1563, 1568.)  SLAPP is an acronym for "'strategic

defendant and respondent John R. Markle after she sued Markle for malicious prosecution in connection with a $100,000 loan Markle made to Allison's husband, Duane Lilien (Duane), when Allison and Duane were married. Allison contends she made a prima facie showing of facts to sustain a favorable judgment, and the trial court thus erred in granting Markle's anti-SLAPP motion. We disagree and affirm the order granting the anti-SLAPP motion.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Overview*

Markle in December 2005 loaned his long-time friend Duane $100,000 (loan).[2] Allison and Duane married in 1989 and separated in July 2008. The loan funds were deposited in a joint account held by Allison and Duane and were used to develop a

---

lawsuit against public participation.'" (*Jarrow Formulas*, *Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.)

[2]     Allison contends in her papers filed in this court that there allegedly "exists *no evidence* in the record" showing the transfer of the $100,000 from Markle to Duane was a loan, as opposed to an "investment." (Italics added.) This contention boarders on the frivolous. Indeed, Allison in her operative complaint repeatedly referred to the $100,000 payment by Markle to Duane in December 2005 as a "loan" and never once referred to the payment as some sort of "investment." (See *Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 746 [noting that "[j]udicial admissions may be made in a pleading" and noting that "[f]acts established by pleadings as judicial admissions '"are conclusive concessions of the truth of those matters, are effectively removed as issues from the litigation, and may not be contradicted, by the party whose pleadings are used against him or her"'"].) In addition, Allison also referred to this payment as a "loan" in her declaration under penalty of perjury to set aside the default judgment. Duane also stated under penalty of the perjury that the $100,000 was a loan, as did Markle. And, of course, Duane prepared the original note and the new note, the latter which he signed in connection with the settlement of the underlying action, verifying the $100,000 payment was a loan. Finally, as discussed *post*, the issue of whether the $100,000 payment was a loan or an investment is in any event a red-herring, given that payment constituted a "debt" incurred by Duane while he was married to Allison.

property located in Borrego Springs, California, "for which Allison [was] listed as a joint tenant [(real property)]."

Duane prepared a written promissory note setting out the terms of the loan (original note). The terms of the original note suggest it was to be signed by Duane and Allison and was to be secured by the real property. It appears neither Duane nor Allison signed the note.

In or around July 2008, Markle learned that Allison had filed for divorce from Duane. In August 2009, Markle, Duane and Allison signed a document titled "Letter of Intent -- Loan Restructuring and related Property Purchase" (LOI). Paragraph 16 of the LOI provided that as a "condition to consummation of the [proposed real estate purchase and sale agreement for the property] contemplated by this LOI[,] and further as a condition the closing of any escrow associated therewith, the Buyer [i.e., Markle] and Seller Duane Lilien only shall enter into, and concurrently close escrow for, a restructuring of the present indebtedness [i.e., ostensibly the loan] owing by Seller to Buyer" on certain terms and conditions provided in the LOI. The LOI defined the term "Seller" to include Duane *and* Allison. The proposed real estate purchase and sale agreement was never consummated, however. As such, the LOI by its own terms expired.

B. *The Underlying Action*

Markle in December 2009 sued Allison and Duane. Markle asserted causes of action against Allison and Duane for breach of contract and common counts and sought an order compelling them "to make, execute and deliver a new promissory note to plaintiff . . . as a replacement for the destroyed original note" (*Markle v. Lilien* (Super.

3

Ct. San Diego County, 2011, No. 37-2009-00062733-CU-CL-NC); the underlying action). Markle in his complaint alleged that Allison and Duane in December 2005 "executed and delivered" to him the original note in the amount of $100,000, the "terms and conditions" of which were shown in the unsigned note attached as exhibit 1 to the complaint. Markle further alleged that the original note "was lost or misplaced, possibly as a result of a fire which destroyed plaintiff's home, and is no longer in existence" and that Markle was prepared "to give an indemnity bond to defendants pursuant to Section 3415 of the Civil Code with sureties approved by the court at the court's direction to indemnify against loss, damage, expense, or other liability which may be suffered by defendants by reason of the issuance of the duplicate promissory note." Markle sought the return of his $100,000 plus interest.

Because Allison did not make an appearance in the underlying action and service of the summons and complaint was initially deemed satisfactory, a default was entered against her in March 2010.

In September 2010, Markle and Duane attended a civil collections mandatory settlement conference and reached a settlement of the underlying action with respect to Duane only (settlement agreement). Under the terms of the arms-length settlement agreement, Duane agreed to pay Markle $110,000, executed a new promissory note (new note) and agreed to make minimum monthly payments of $100 beginning in March 2011 for 30 months, at which time the outstanding balance would be due and payable in a final balloon payment.

The settlement agreement also provided that any amounts Markle collected from Allison would offset the amount Duane owed under the new note and, by the same logic,

4

that any payments made by Duane under the new note would offset any amounts Allison would owe under any judgment. In addition, if Duane made all payments as provided under the settlement agreement, Markle agreed to "file a request for dismissal of [the underlying action] with prejudice in connection with the request for default judgment against Allison Lillien [*sic*]." As a result of the settlement agreement, Markle dismissed Duane without prejudice from the underlying action.

Markle in early November 2010 filed an application for default judgment against Allison. In connection with that application, Markle submitted a declaration under penalty of perjury stating that he had loaned $100,000 to "the defendants," as evidenced by a cashier's check dated December 14, 2005, made payable to Duane in the amount of $100,000; that the original note had been lost; that, under the terms of the original note, Markle was entitled to seek security for the note either on default or demand; that Markle did not seek security for the note; and that Markle hereby "waives any right to security or to a security interest provided for by the [original] [n]ote." Markle sought a judgment in the amount of $109,175.65 against Allison based on the $100,000 loan—with interest accruing *not* from the date of the loan but from the date Markle filed his complaint (December 2009) through November 15, 2010 at the daily rate of $27.39 (prejudgment interest at legal rate of 10 percent)—and costs. Judgment was entered against Allison in mid-November 2010 in the amount of $112,480.65. However, at no time did Markle seek to execute on the judgment against Allison.

Allison in May 2011 first appeared in the underlying action and filed a motion to set aside the default judgment. Allison alleged she had not been personally served with the summons and complaint and thus lacked knowledge of the underlying action until late

5

February 2011, when she learned from Duane in connection with a mandatory settlement conference in their divorce proceedings that judgment in the underlying action had been entered against her.

In her declaration in support of her motion brought pursuant to Code of Civil Procedure section 473.5 to set aside the default judgment, Allison stated she "never" (emphasis in original omitted) signed the unsigned original note and she "knew nothing about this 'loan,' and as stated previously only found out about the existence of this lawsuit during a mandatory settlement conference" in late February 2011, where, she alleged, Duane "strategically waited until the end of a four (4) hour settlement conference to reveal this, knowing that Allison was kept in [t]he dark about the existence of this lawsuit from the outset."

Allison in her declaration further alleged that she did not own the business where she was allegedly personally served; that she was never personally served and, instead, that she was "merely a treating physician" at the business; and that, in any event, she practiced medicine using her maiden name "Dr. Lovell" and perhaps that is why she never received the summons and complaint. The trial court in early September 2011 tentatively granted Allison's motion to set aside Markle's default judgment, finding she made a sufficient showing that she did not receive actual notice of the summons and complaint and that her lack of such notice was not the result of her avoiding service or inexcusable neglect.

The day after the trial court issued its tentative ruling granting Allison's motion to set aside the default judgment, Markle dismissed Allison without prejudice from the underlying action. Markle in his declaration in support of his anti-SLAPP motion stated

6

under penalty of perjury that his decision to dismiss Allison "had nothing to do with the merits" of the underlying action; that he dismissed the underlying action against Allison because of the settlement agreement reached with Duane; that the "case against Allison had dragged on for nearly two years and seemed no closer to resolution once the default had been set aside"; and that he "had already spent significantly more on legal fees than [he] had expected and believed, based on the ongoing divorce proceeding, that Allison Lilien would vigorously litigate the case even if doing so were not economically justified." Markle also stated the only reason he filed the underlying action against Allison was to have the loan repaid.

Allison in response/retaliation sued Markle and Duane. In her original complaint, Allison asserted causes of action against Markle for malicious prosecution, based on his dismissal of the underlying action against her, and for conspiracy to inflict emotional distress. After the court sustained Markle's demurrer to the conspiracy cause of action, Allison in July 2012 filed the 23-page operative complaint, asserting against Markle a single claim for malicious prosecution.[3]

In her operative complaint, Allison generally alleged that Duane and Markle for the last 30 years have been "close personal and business friends"; that Markle has assisted Duane "financially over these 30 years"; that she and Duane separated in early July 2008;

---

[3]    As noted *ante*, Allison's operative complaint also asserted various causes of action against Duane—who is not a party in this appeal—including for breach of fiduciary duty based on Allison's contention that she was involved in "'marital proceedings made in hell'" as a result of Duane's "frivolous and fictitious claims" against her; Allison's attempts to "uncover the existence and extent of community property holdings" solely under Duane's control; and his attempts to saddle Allison with "numerous loans and debts not previously known" by Allison that Duane contends must be paid out of "community equity in the community property of the parties," including the loan made by Markle.

that during her marriage with Duane he "experienced a history of failed business endeavors"; that she was "never involved" in Duane's business endeavors and that he, in any event, "kept his business dealings . . . away from [her]"; that Duane contends the loan made by Markle was and is a community debt; and that Markle unlawfully sued her after Markle and Duane "collu[ded]" to use Markle's lawsuit as "leverage to force" her to repay the 2005 loan with income she earned after she and Duane had separated.

Allison further alleged that Markle brought the underlying action against her "for the sole purpose of forcing [her] to involuntarily give real property security" for the original promissory note "knowing [she] had no legal obligation" in connection with that note. She also alleged Markle knew the default judgment he obtained against her was a "sham," and he did not have "an honest suspicion or belief" in his declaration in support of the application for default judgment that Allison was personally liable for repayment of the loan.

Allison alleged that if the underlying action had been successful, Markle not only would benefit from obtaining a personal judgment against her "but also would be performing an act of friendship for his close friend Defendant Duane by aiding Duane in forcing Allison to pay Duane's personal obligation owing to Markle." Allison prayed for damages in excess of $100,000 and sought an award of punitive damages of $500,000 against Markle.

Markle in response filed an anti-SLAPP motion to strike Allison's malicious prosecution action. The trial court granted that motion, ruling as follows:

"The sole cause of action asserted against defendant Markle in the [operative] complaint is for malicious prosecution. An action for malicious prosecution based on a

8

party's or attorney's statements or writings in an earlier judicial proceeding is subject to being stricken as a SLAPP suit: '[B]y its terms, section 425.16 potentially may apply to every malicious prosecution action, because every such action arises from an underlying lawsuit, or petition to the judicial branch.' *Jarrow Forumlas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735; *Dickens v. Provident Life & Acc. Ins. Co.* (2004) 117 Cal.App.4th 705, 713. Malicious prosecution plaintiffs must be prepared to show at the outset a probability of prevailing—i.e., that the earlier suit was filed 'maliciously' and 'without probable cause.' This does not 'unduly burden plaintiffs' access to court.' *Jarrow Formulas, Inc. v. LaMarche*, *supra*, 31 Cal.4th at 740.

"In order to show the probability of success on her malicious prosecution claim, plaintiff must show a legally sufficient claim and that the claim is supported by competent, admissible evidence. *DuPont Merck Pharmaceutical Co. v. Superior Court* (2000) 78 Cal.App.4th 562, 568. The 'probability of prevailing' is tested by the same standard governing a motion for summary judgment. That is, in opposing a SLAPP motion, it is the plaintiffs' burden to make a prima facie showing of facts that would support a judgment in the plaintiffs' favor. *Kyle v. Carmon* (1999) 71 Cal.App.4th 901, 907. The court will consider the pleadings and evidentiary submissions of both the plaintiff and the defendant, but the court does not weigh credibility or comparative strength of the evidence; the court considers the defendant's evidence only to determine if it defeats the plaintiff's showing as a matter of law. *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 906.

"A plaintiff in a malicious prosecution action 'must plead and prove that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a

9

legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' *Bertero v. National General Corp.* (1974) 13 Cal.3d 43, 50; see *Cote v. Henderson* (1990) 218 Cal.App.3d 796. Unlike the malice element, which is a factual question, the issue of whether there was an absence of probable cause in bringing the prior case is a question of law to be determined by the court. *Paiva v. Nichols* (2008) 168 Cal.App.4th 1007, 1018.

"As to (1), Markle brought a prior action against the plaintiff and later dismissed that action following an order setting aside the default of the plaintiff. 'Voluntary dismissal is presumed to be a favorable termination on the merits, unless otherwise proved to a jury. (Citations omitted[.]) This is because "[a] dismissal for failure to prosecute . . . does reflect on the merits of the action [and in favor of the defendant]. . . . The reflection arises from the natural assumption that one does not simply abandon a meritorious action once instituted."' *Sycamore Ridge Apartments, LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1400.

"Markle testifies that he dismissed the prior action because 'he decided that his time and money could be spent on activities more rewarding than litigation.' See Markle Decl., ¶ 11. However, there is no case that holds that financial considerations should be analyzed in determining whether a dismissal of the underlying action constitutes a favorable determination. Thus, Markle's declaration cannot establish, as a matter of law, that plaintiff would be unable to establish the element of favorable termination. *Drummond v. Desmarais* (2009) 176 Cal.App.4th 439, 457.

"As to (2), the presence or absence of probable cause is viewed under an objective standard applied to the facts upon which the defendant acted in prosecuting the prior

10

case. *Sheldon Appel v. Albert & Oliker* (1989) 47 Cal.3d 863, 878, 881. The test of determining probable cause is whether any reasonable attorney would have thought the claim to be tenable. *Id.* at 886.

"Hence, 'probable cause to bring an action does not depend upon it being meritorious, as such, but upon it being *arguably tenable*, i.e., not so completely lacking in apparent merit that no reasonable attorney would have thought the claim tenable. [Citation.] Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win. . . .[] [Citation.]' [Citations.] Probable cause is established by showing that the 'claim . . . is legally sufficient and can be substantiated by competent evidence. . . . ' *Paiva v. Nichols*[, *supra*,] 168 Cal.App.4th [at pp.] 1019-20.

"The Court has considered both parties' arguments regarding whether Markle had probable cause to bring the underlying action and concludes that the claim against Allison for recovery of the alleged loan is an arguably tenable claim. In particular, even assuming that the loan was made to Duane only and Markle never obtained a promise by Allison to re-pay the loan, Markle's claims against Allison to recover under community property or agency principles from Allison is legally tenable.

"As to (3), the Court is not persuaded that plaintiff has presented admissible evidence establishing that the prior action was filed maliciously. To constitute malice there must be an improper motive or purpose. *Masterson v. Pig'n Whistle Corp.*, 161 Cal.App.2d 323, 338. 'Malice' is demonstrated by evidence which establishes bad faith, or the absence of an honest and sincere belief that the prosecution was justified by the existent facts and circumstances. *Singleton v. Singleton*, 68 Cal.App.2d 681, 696; *Grove*

*v. Purity Stores, Ltd.*, 153 Cal.App.2d 234, 241.  Plaintiff's evidence does not establish a prima facie case of malice."

DISCUSSION

A.  *Guiding Principles of the Anti-SLAPP Statute*

Under section 425.16, subdivision (b)(1), a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

In the instant case, the parties recognize that a malicious prosecution claim is subject to the anti-SLAPP statute.  (See *Jarrow Formulas*, *Inc. v. LaMarche*, *supra*, 31 Cal.4th at pp. 736-741; *Kleveland v. Siegel & Wolensky, LLP* (2013) 215 Cal.App.4th 534, 548-549.)  As such, the burden then shifted to Allison to show a likelihood of prevailing on that claim.  (See § 425.16, subd. (b)(1).)

To show the likelihood of prevailing on the merits, Allison "'must demonstrate that the complaint [was] both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence [she] submitted . . . [was] credited.' [Citations.]"  (See *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821.)  "'We consider "the pleadings, and supporting and opposing affidavits . . . upon which the liability or defense is based."  [Citation.]  However, we neither "weigh credibility [nor] compare the weight of the evidence.  Rather, [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to

12

determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]'
[Citations.]" (*Nygard, Inc. v. Uusi–Kerttula* (2008) 159 Cal.App.4th 1027, 1036.)

In opposing an anti-SLAPP motion, a plaintiff need only establish that the claim subject to section 425.16 has "minimal merit." (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 291 (*Soukup*); *Sycamore Ridge Apartments LLC v. Naumann* (2007) 157 Cal.App.4th 1385, 1397.) We independently review the trial court's order granting a special motion to strike under section 425.16. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055.)

B. *Probability of Prevailing on the Malicious Prosecution Claim*

As noted by the trial court, to prove a malicious prosecution claim Allison must show the underlying action "'(1) was commenced by or at the direction of the defendant and was pursued to a legal termination in . . . plaintiff's[] favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' [Citation.]" (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 676; see also *Soukup*, *supra*, 39 Cal.4th at p. 292.)

The record shows the parties in this appeal do not dispute that Markle's dismissal without prejudice of the underlying action against Allison was a termination in her favor. (See *Sycamore Ridge Apartments LLC v. Naumann*, *supra*, 157 Cal.App.4th at p. 1400 [noting that a voluntary dismissal, such as in the instant case, "is presumed to be a favorable termination on the merits, unless otherwise proved to a jury"]; cf. *Lackner v. LaCroix* (1979) 25 Cal.3d 747, 750-751 [observing that a dismissal (i.e., for failure to prosecute) "'reflect[s] on the merits of the action'" in favor of the defendant because of

13

"'the natural assumption that one does not simply abandon a meritorious action once instituted'"].)

    1.  *Probable Cause*

"An action is deemed to have been pursued without probable cause if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or while it was being prosecuted. The court must 'determine whether, on the basis of the facts known to the defendant, the institution of the prior action was legally tenable.' (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 878 [(*Sheldon*)].) 'The resolution of that question of law calls for the application of an objective standard to the facts on which the defendant acted. [Citation.]' (*Ibid.*; italics omitted.) The test the court is to apply is whether 'any reasonable attorney would have thought the claim tenable . . . .' (*Id.* at p. 886.) The tort of malicious prosecution also includes the act of 'continuing to prosecute a lawsuit discovered to lack probable cause.' (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 973.) In determining the probable cause issue, the same standard applies 'to the continuation as to the initiation of a suit.' (*Id.* at p. 970.)

"'In analyzing the issue of probable cause in a malicious prosecution context, the trial court must consider both the factual circumstances established by the evidence and the legal theory upon which relief is sought. A litigant will lack probable cause for his [or her] action either if he [or she] relies upon facts which he [or she] has no reasonable cause to believe to be true, or if he [or she] seeks recovery upon a legal theory which is untenable under the facts known to him [or her].' [Citation.]

"In determining whether the prior action was legally tenable, i.e., whether the action was supported by probable cause, the court is to construe the allegations of the

underlying complaint liberally, in a light most favorable to the malicious prosecution defendant.  [Citation.]"  (*Kleveland v. Siegel & Wolensky, LLP*, *supra*, 215 Cal.App.4th at pp. 550-551.)

Here, the record shows that Markle made the $100,000 loan to Duane in December 2005; that, at the time, Allison and Duane were married and they separated in July 2008; that Duane prepared the original note setting forth the terms of the loan that included signature lines for Allison and him, as husband and wife; that Duane obtained the loan to develop the real property in which Allison was a joint tenant; that the loan proceeds were deposited in a joint account held by Allison and Duane; that, although it appears neither Duane nor Allison signed the original note, the loan was in fact made by Markle as evidenced by the check cashed by Duane in December 2005; that, during their marriage, Duane allegedly had a history of failed business endeavors and kept Allison in the dark about many such endeavors, to her financial detriment; and, perhaps most importantly, that when Markle sued Allison and Duane in December 2009 for repayment of the loan proceeds, the law provided the community estate is generally liable for the debt of either spouse.

Indeed, Family Code section 910, subdivision (a) provides:  "Except as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage, regardless of which spouse has the management and control of the property and regardless of whether one or both spouses are parties to the debt or to a judgment for the debt."

"Thus, the liability of community property is not limited to debts incurred for the benefit of the community, but extends to debts incurred by one spouse alone exclusively

15

for his or her own personal benefit. [Citations.] Although a spouse may be required to reimburse the community for the misuse of community assets [citations], the community estate remains liable to third party creditors for any debt incurred as a result of such misuse of assets." (*Lezine v. Security Pacific Fin. Services, Inc.* (1996) 14 Cal.4th 56, 64.)

A "debt" within the meaning of the Family Code is an "obligation incurred by a married person before or during marriage, whether based on contract, tort, or otherwise." (Fam. Code, § 902.) In the case of a contract, a "debt" is deemed "incurred" at the time the contract is made. (Fam. Code, § 903, subd. (a).) That performance of a contract may extend into the postseparation period of a marriage does not mean the contract was made *after* separation so as to avoid Family Code section 910, subdivision (a). (See, e.g., *In re Marriage of Feldner* (1995) 40 Cal.app.4th 617, 622 (*Feldner*).)

In *Feldner*, the obligor spouse, a contractor, entered into a contract while married to act as a superintendent for the construction of a home for a third party. After separation, the obligor spouse refused to complete work on the contract and ultimately the third party sued the obligor spouse for breach of contract/implied warranty. The trial court found the third party lawsuit was a community obligation. The *Feldner* court agreed. (*Feldner*, *supra*, 40 Cal.App.4th at p. 625.)

In so doing, the court in *Feldner* construed Family Code section 903 and noted the statute was "oblivious to the time of *performance* of a contract. The statute does not say that a contract debt is incurred when a contract is broken, or incurred when it is to be substantially performed, or anything like that. It says that a contract debt is 'incurred' when the contract is 'made.' When read together with section 910, subdivision (a)

16

['Except as otherwise expressly provided by statute, the community estate is liable for a debt incurred by either spouse before or during marriage . . . .'] the effect of section 903 is to characterize contract debts as community when the contract is 'made' (as distinct from performed) during the marriage." (*Feldner*, *supra*, 40 Cal.App.4th at p. 622.)

The *Feldner* court recognized that many contracts required extended periods of performance but, even in those cases, when performance continues after marital separation, the underlying character of the debt is unchanged: "The *performance* of a contract, however, is fundamentally different from the problem of determining its community or separate character. Many contracts, such as an installment debt, require extended periods of performance. The classic solution to the problem created by a separation date during such an extended period is to allow for reimbursement by the spouse who uses his or her postseparation earnings to pay a 'preexisting' community obligation. [Citations.]" (*Feldner*, *supra*, 40 Cal.App.4th at p. 624, fn. omitted.)

We independently conclude Allison has not satisfied her minimal burden under step two of the anti-SLAPP statute of showing a probability of prevailing on her malicious prosecution action because we conclude the underlying action (in which Markle sought repayment of the loan made to Duane during his marriage to Allison), when viewed in an objective manner, was legally tenable as to Allison and the community's obligation to pay that "debt." (See Fam. Code, §§ 902, 903, subd. (a) & 910, subd. (a); see also *Sycamore Ridge Apartments LLC v. Naumann*, *supra*, 157 Cal.App.4th at p. 1402 [noting an action is without probable cause "if it was not legally tenable when viewed in an objective manner as of the time the action was initiated or

17

while it was being prosecuted"].)[4]  For this reason alone, we independently conclude the trial court properly granted Markle's anti-SLAPP motion.[5]

2. *Malice*

Assuming, for the sake of argument, that Allison can establish a probability of prevailing on the lack of probable cause element of malicious prosecution, we nonetheless conclude she cannot meet her minimal burden to show a probability of prevailing on the malice element.  The malice element focuses on a defendant's subjective intent in initiating the prior action and is generally an issue to be determined by a jury. (*Sheldon*, *supra*, 47 Cal.3d at p. 874; *HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.)  To establish malice, Allison was required to show by a preponderance of the evidence that Markle brought the underlying action based on hostility or ill will or for another improper purpose.  (See *Ross v. Kish* (2006) 145 Cal.App.4th 188, 204; *Padres L.P. v. Henderson* (2003) 114 Cal.App.4th 495, 522.)

"Malice is usually proved by circumstantial evidence.  [Citation.]  Although a lack of probable cause, standing alone, does not support an inference of malice, malice may still be inferred when a party knowingly brings an action without probable cause. [Citation.]"  (*Padres L.P. v. Henderson*, *supra*, 114 Cal.App.4th at p. 522.)  Whether

---

[4]     Our decision in the instant case is limited solely to the issue whether Allison met her burden to show a probability of prevailing on her malicious prosecution action and, specifically, to establish the lack of probable cause element of this tort action.  We thus are *not* deciding in this proceeding whether and to what extent Allison and/or the community, if at all, are liable to pay the debt on the loan as set forth in the new note executed by Duane.

[5]     In reaching our decision, we did *not* consider any of the evidence proffered by Markle in support of his anti-SLAPP motion to which Allison had *unsuccessfully* objected to in the trial court.

18

malice exists presents a factual question, and its proof may be inferred from all the circumstances of the case. (*Sheldon*, *supra*, 47 Cal.3d at p. 874.)

Here, Allison has not proffered sufficient evidence for purposes of the anti-SLAPP statute from which a reasonable person could infer an improper motive by Markle in asserting against her causes of action for breach of contract and common counts in the underlying action.

First, we reject Allison's contention that Markle brought the underlying action against her for the "sole purpose" of forcing her to give involuntarily real property security on the note she did not sign. Instead, the record shows that in November 2010, *before* Allison filed her malicious prosecution action against Markle, he already had agreed (under penalty of perjury) to "waive[] any right to security or to a security interest provided for by the [original] note" in connection with the prove up of his default judgment against Allison.

Second, that Markle alleged in the underlying action that the original note had been lost or misplaced, when it appears neither Duane nor Allison had signed that note, also does not establish the requisite malice. There is no dispute on this record that Markle made the loan to Duane, a married person, during Duane's marriage to Allison. (See Fam. Code, §§ 902 & 903, subd. (a).) In addition, the record shows that Duane reaffirmed the debt in the new note, after he and Markle signed the settlement agreement and that Markle agreed, in connection with that settlement, to dismiss Allison from the underlying action if and when Duane repaid the debt evidenced by the new note.

What's more, the record shows that Allison, in August 2009 and before the underlying action was filed, knew about the loan from Markle to Duane as generally

19

referenced by the LOI that sought, among other things, to restructure the loan so that it could be repaid by Duane *only* in connection with the sale of certain property.

Finally, we conclude Allison's contention that the underlying lawsuit was the result of some sort of collusion between Duane, on the one hand, and Markle, on the other, to saddle her with the entire debt from the loan is wholly speculative, is contrary to the law in any event, and is not supported by admissible evidence in the record. Rather, the record shows Markle sued on the note after the parties unsuccessfully sought in the LOI to restructure the debt. In addition, as noted above, Duane signed a new note reaffirming the debt and agreed to make all payments toward that debt. The record also shows that even after a default judgment was entered against Allison, Markle did not seek to execute on that judgment.

For these reasons, we independently conclude Allison also has not shown a probability of prevailing on the malice element of her malicious prosecution action.

DISPOSITION

The trial court's order granting Markle's special motion to strike Allison's malicious prosecution claim is affirmed. Markle to recover his costs of appeal.

BENKE, Acting P. J.

WE CONCUR:

AARON, J.

IRION, J.

20